RUSINEK v SCHULTZ, SNYDER & STEELE LUMBER COMPANY

Docket No. 65509. Decided August 24, 1981. On application by plaintiffs for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals as to plaintiff Marie Rusinek and remanded the case to the Court of Appeals for consideration of an undecided issue. Rehearing denied 412 Mich 1101.

Eugene Rusinek brought an action against Schultz, Snyder & Steele Lumber Company and Richard Braybrook under the no-fault insurance act for personal injuries suffered by Mr. Rusinek in an automobile accident, and his wife, Marie Rusinek, claimed damages for loss of consortium. The Genesee Circuit Court, Robert M. Ransom, J., denied the defendant's motion to dismiss Mrs. Rusinek's claim for loss of consortium, and the jury awarded verdicts of $50,000 for Mr. Rusinek and $10,000 for Mrs. Rusinek. The Court of Appeals, MacKenzie and Corkin, JJ. (Cynar, P.J., dissenting in part), reversed on the grounds that loss of consortium is not part of the tort recovery preserved by the no-fault insurance act for persons injured by negligent motorists and that the trial court had erroneously instructed the jury on the issue of damages as to Mr. Rusinek's claim (Docket No. 78-3137). Plaintiffs apply for leave to appeal. *Held:*

The no-fault act has not abolished the common-law action for loss of consortium.

1. It is undisputed that loss of consortium is a noneconomic loss under the provision of the no-fault insurance act which partially abolished tort liability, but preserved it for certain damages for noneconomic loss. The question is whether the "liability for noneconomic loss" which the no-fault act preserves refers only to losses suffered by the "injured person" or whether the phrase "if the injured person has suffered death, serious impairment of body function or permanent serious disfigurement" is merely the statement of a threshold condition that must be met before another person who suffers noneconomic loss may seek recovery in tort. The language of the statute is ambiguous and therefore subject to judicial construction.

2. The common-law action for loss of consortium is not

expressly abolished by the no-fault insurance act. There is nothing in the language of the act or in its legislative purposes that requires a construction that it does so by implication, because a claim of loss of consortium is derived from the injured spouse's action and does not create a new case, nor does it contribute significantly to the problems that the no-fault act was intended to alleviate.

The judgment of the Court of Appeals as to the claim of plaintiff Marie Rusinek is reversed, and the case is remanded to the Court of Appeals for consideration of the issue left unaddressed by the Court of Appeals.

98 Mich App 380; 296 NW2d 262 (1980) reversed in part.

*Edwin Jakeway, P.C.* (by *Bennett S. Engelman),* for plaintiffs.

*Brownell, Andrews, Philpott & Piper* for defendant.

PER CURIAM. In this case we examine the question of whether Michigan's no-fault insurance act has abrogated, in automobile injury cases, the common-law action for loss of consortium.

I

Plaintiffs, husband and wife, brought suit for damages arising out of an automobile accident which occurred on July 30, 1974. Plaintiff Eugene Rusinek claimed he sustained personal injuries to his neck, back and elbow amounting to "serious impairment of body function" within the meaning of the no-fault act. Plaintiff Marie Rusinek, who was not involved in the accident, claimed the loss of consortium arising out of her husband's injuries. The trial court denied a motion to dismiss the consortium claim, and, following trial on the question of damages, the jury returned a verdict of $50,000 in favor of Mr. Rusinek and a verdict of

$10,000 in favor of Mrs. Rusinek. A motion for a new trial was denied.

On appeal, the Court of Appeals reversed both verdicts, the panel agreeing that an instructional error required retrial on the issue of damages as to Mr. Rusinek, and a majority of the panel holding that Michigan's no-fault act had abolished the right of the spouse of a person injured in an automobile accident to recover in tort for loss of consortium.

The decision of the Court of Appeals on this question directly conflicts with the decision reached by another panel of the Court of Appeals in *Warner v Brigham,* 90 Mich App 640; 282 NW2d 428 (1979), *lv den* 407 Mich 907 (1979). In another reported decision, *Cotton v Minter,* 469 F Supp 199 (ED Mich, 1979), the United States District Court, interpreting Michigan law, held that Michigan's no-fault act does not preclude an action for loss of consortium.

We take up the question to resolve this conflict, and we hold that Michigan's no-fault act has not abolished the common-law action for loss of consortium.

## II

The right of a spouse to recover from a tortfeasor for loss of consortium occasioned by injuries inflicted on the other spouse is well established in Michigan's common law. *Montgomery v Stephan,* 359 Mich 33; 101 NW2d 227 (1960). Consortium is defined as including "society, companionship, service, and all other incidents of the marriage relationship". *Washington v Jones,* 386 Mich 466, 472; 192 NW2d 234 (1971).

In 1972, Michigan enacted its no-fault insurance

act which partially abolished the common-law remedy in tort for persons injured by negligent motor vehicle tortfeasors. The act was a response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort liability system. The goal of the no-fault system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses through a system of compulsory insurance which would provide victims with benefits for their injuries as a substitute for their common-law remedy in tort. *Shavers v Attorney General,* 402 Mich 554; 267 NW2d 72 (1978). Section 3135 of the no-fault act, the operative provision which partially abolished tort liability and which is the source of the present controversy, provides, in pertinent part:

"(1) *A person remains subject to tort liability for noneconomic loss* caused by his or her ownership, maintenance, or use of a *motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.*

"(2) Notwithstanding any other provision of law, *tort liability* arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101(3) and (4) was in effect *is abolished except as to:*

\* \* \*

"(b) *Damages for noneconomic loss as provided and limited in subsection (1)."* (Emphasis added.) MCL 500.3135; MSA 24.13135.

It is undisputed that loss of consortium is a noneconomic loss. The question that has arisen, however, is whether "liability for noneconomic loss" refers only to losses suffered by the "injured person" who "has suffered death, serious impairment of body function or permanent serious disfig-

urement" or whether the phrase: "if the injured person has suffered death, serious impairment of body · function or permanent serious disfigurement", is merely the statement of a threshold condition that must be met before another who suffers noneconomic loss may seek recovery in tort. Under the latter interpretation the spouse of a person who receives above-threshold injuries may recover for loss of consortium, while under the former interpretation he or she may not.

In *Warner v Brigham, supra,* a majority of a Court of Appeals panel held that the language of the statute was clear; that it did not limit liability to those losses suffered by an injured person, and that any noneconomic loss compensable at common law may be recovered under the statute once the injured person has suffered injuries which meet the statute's threshold requirements. The dissenting member of the panel, Judge BASHARA, found the language of the statute ambiguous and wrote that the only reasonable construction consistent with the operative language of the statute and the act's purpose of limiting automobile injury tort actions was that tort recovery was limited to injured persons who meet the threshold requirements.

A majority of the Court of Appeals panel in the instant case agreed with the reasoning of Judge BASHARA and held that the spouse of a person injured in an automobile accident may not recover for loss of consortium. Judge CYNAR dissented from this part of the decision, saying that because the purpose of the no-fault act is to compensate persons injured in automobile accidents and since claims for loss of consortium had long been recognized in Michigan and the no-fault act did not specifically exclude such claims, the act should be

construed as not barring the spouse's claim for loss of consortium.

## III

While we agree that the language of the statute is ambiguous and subject therefore to judicial construction, we believe the dispositive principles of construction applicable here are found in the United States District Court decision in *Cotton v Minter, supra.* There the Court concluded that neither the language of the statute nor the legislative purpose of the act were dispositive. The Court noted that the statute was equally susceptible of either interpretation and that it was unlikely that the existence of consortium claims contributed significantly to the problems of high legal costs and the over-burdened court system that the no-fault act was designed to alleviate. Consequently, the Court followed the long-established principle of statutory construction that statutes which abolish the common law should be construed narrowly. *Bandfield v Bandfield,* 117 Mich 80; 75 NW 287 (1898). The Court concluded that since loss of consortium is a well-established cause of action at common law in Michigan the no-fault statute should not be construed as impliedly repealing the right to recover for loss of consortium.

We find the rationale of the Court in *Cotton v Minter* to be persuasive. Const 1963, art 3, § 7 provides:

"The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed."

Although a statute which expressly extinguishes a

common-law right is a proper exercise of legislative authority, *Myers v Genesee County Auditor,* 375 Mich 1; 133 NW2d 190 (1965), statutes in derogation of the common law must be strictly construed, *Morgan v McDermott,* 382 Mich 333; 169 NW2d 897 (1969), and will not be extended by implication to abrogate established rules of common law, *Bandfield v Bandfield, supra.* The statute, however, must be construed sensibly and in harmony with the legislative purpose. *In re Cameron's Estate,* 170 Mich 578; 136 NW 451 (1912).

Applying these principles to the question presented in this case, we conclude that the no-fault act must be construed as retaining the common-law action for loss of consortium. The common-law action for loss of consortium in Michigan is not expressly abolished by the language of § 3135. If this section abolishes this common-law right it must be found to do so by implication. There is nothing, however, in the language of the act or its legislative purposes that requires such a construction. Since it is derived from the injured spouse's action, a claim of loss of consortium does not create a new case nor does it contribute significantly to the problems the act was intended to alleviate.

Accordingly, in lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse that part of the Court of Appeals judgment which reversed the trial court judgment as to plaintiff Marie Rusinek and remand the case to the Court of Appeals for consideration of the issue left unaddressed by the Court of Appeals. In all other respects the application for leave to appeal is denied because the Court is not persuaded that the question presented should now be reviewed by this Court.

The motion for leave to file a brief amicus curiae is thereby rendered moot and it is denied.

Costs to appellants.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.