MacArthur DRAKE, et al.,
Plaintiffs–Appellants,

v.

Keith L. GORDON, et al.,
Defendants–Appellees.

No. 86–2031.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 23, 1987.

Decided June 3, 1988.

---

702

Gilbert King (argued), Gary, Ind., for plaintiffs-appellants.

Macarthur Drake, Gary, Ind., pro se.

R. Stephen Olsen (argued), Ann Arbor, Mich., for defendants-appellees.

Before LIVELY and WELLFORD, Circuit Judges; and McRAE, District Judge.*

* The Honorable Robert M. McRae, Jr., Senior U.S. District Judge, Western District of Tennessee, sitting by designation.

WELLFORD, Circuit Judge.

Plaintiffs, Indiana residents, were passengers in an automobile struck from the rear in Jackson County, Michigan, by an automobile owned by defendant Cynthia Gordon and driven by defendant Keith Gordon. Plaintiffs filed suit against defendants alleging that at the time of the collision they had been in Michigan less than 30 days during the year 1984 and that their vehicle was not covered by an insurer filing a certification in compliance with § 3163 of the Michigan No Fault Statute ("MNFS").[1] Defendants respond that these claims are not substantiated in the record, but, in any event, defendants claim that MNFS bars the damage claims of the plaintiffs.

At the time of the accident, August 12, 1984, the parties agree that defendant Cynthia Gordon was registered in Michigan and was covered by an automobile insurance policy procured in compliance with MNFS. Defendant, Keith Gordon, was not a named insured on a policy certified under § 3163, but defendants assert that he was an insured under Cynthia Gordon's policy as a permissive driver or user. Defendants claim that this action is controlled by the MNFS, and for the purposes of summary judgment they admitted that the injuries and damages claimed by plaintiffs were proximately caused by negligence attributable to defendants. The question in this case is whether MNFS is controlling under these circumstances.

The district court held that the mere fortuity of involvement in an auto accident with non-residents should not require the Michigan resident defendants to be subject to tort liability which is expressly barred by the MNFS. The court held that:

... a non-resident, like a Michigan resident, may not recover non-economic damages for injuries sustained in a motor vehicle accident in Michigan unless his

injuries satisfied the standard prescribed by M.C.L.A. § 500.3135 and *Cassidy v. McGovern* [, 415 Mich. 483, 330 N.W.2d 22 (1982)]. Such a result is not violative of the First and the Fourteenth Amendment rights of the non-residents. A non-resident should not be placed on a superior footing than a resident motorist with respect to his right to recover damages from a negligent operator of an automobile.

*Drake v. Gordon*, 644 F.Supp. 376, 379 (E.D.Mich.1986) (footnote omitted).

The first and basic issue is whether MNFS § 3135 applies to a cause of action in tort by a non-resident victim of an automobile accident in Michigan caused by the negligence of a Michigan resident insured under the MNFS where the non-resident claimant had been travelling or operating a vehicle in Michigan less than 30 days and where the claimant's insurance was not certified under the MNFS. We conclude that MNFS is controlling under these circumstances.

M.S.A. § 24.13102 [M.C.L. § 500.3102] (1987) (MNFS § 3102) provides in part that "(1) A nonresident owner or registrant of a motor vehicle not registered in this state shall not operate or permit the vehicle to be operated in this state for an aggregate of more than 30 days in any calendar year unless he or she continuously maintains security for the payment of benefits." Criminal penalties are set out for violators of the section. M.S.A. § 24.13113 [M.C.L. § 500.3113] (MNFS § 3113) establishes that a "person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed: ... The person was not a resident of this state, was an occupant of a motor vehicle ... not registered in this state, and was not insured by an insurer which has filed a

---

1. M.S.A. § 24.13163 [M.C.L. § 500.3163] (1987) (MNFS § 3163) provides in pertinent part:
   Certification of insurer. Sec. 3163. (1) An insurer authorized to transact automobile liability insurance and personal and property protection insurance in this state shall file and maintain a written certification that any accidental bodily injury or property damage

occurring in this state arising from the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle by an out-of-state resident who is insured under its automobile liability insurance policies, shall be subject to the personal and property protection insurance system set forth in this act.

certification in compliance with section 3163 [MCL § 500.3163]." Finally, M.S.A. § 24.13135(2) [M.C.L. § 500.3135(2)] abolishes all "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3103(3) and (4) was in effect" with four exceptions. Section (1) of the statute provides that a "person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of bodily function, or permanent serious disfigurement." There is no such claim of impairment or disfigurement here involved.

## I. JURISDICTION

██ We first address in this appeal a jurisdictional question raised by this court at oral argument. Defendants initially denied the allegations of the complaint, specifically denying that plaintiffs were entitled to any recovery for property damage under the MNFS. Later, defendants filed a motion for partial summary judgment, asserting that no plaintiff had asserted a threshold claim of serious impairment, or otherwise, under the MNFS. In this motion, defendants did not specifically deal with liability for any part of the property damage claim. Plaintiffs responded to defendants' motion, and also filed a cross-motion for summary judgment, acknowledging that they did not fall within a specified exception to the MNFS. "Damages up to $400 to motor vehicles, to the extent that the damages are not covered by insurance" constitute an exception under MSA § 24.13135(2)(d) [M.C.L. § 500.3135(2)(d)], MNFS § 3135. Plaintiffs made no claim to an award under this exception, but did assert in a memorandum in support of their cross-motion that "Plaintiffs' vehicle was not covered by an insurer filing a certification in compliance with Section 3163 of the MNFS."

In ruling on these motions for summary judgment, the district court made no reference to the style of defendants' motion—that it was for *partial* summary judgment—and in making his ruling thereon, the district judge did not discuss the issue of property damage. At oral argument, defendants' counsel indicated that they owed plaintiffs $400 pursuant to the § 24.13135(2)(d) exception of the MNFS.[2] Plaintiffs, as pointed out, have made no specific claim of entitlement to this amount, although the complaint did assert that "plaintiff, Linda Drake, has incurred property loss." The parties apparently considered Judge LaPlata's oreder to have dealt with all the issues raised. His summary conclusion was simply that "a nonresident should not be placed on a superior footing than a resident motorist with respect to his right to recover *damages* from a negligent operator of an automobile." 644 F.Supp. at 379 (emphasis added). He did not indicate that "damages" referred only to those for injuries to the person exclusive from property damages.

Apparently in response to our question about the finality of the district court's order of October 6, 1986, the district judge entered a *nunc pro tunc* order of October 26, 1987 stating that the prior order had "disposed of the case in its entirety." Defendants have filed no supplemental or responsive brief dealing with this question. Plaintiffs maintain that there was a clear intent to adjudicate all claims on October 6, 1986; and that "nothing remains to be done before the district court in the instant case." (Appellant's supplemental brief filed November 5, 1987, at p. 2). They further maintain, without contravention, that the "parties understood the district court's 10/6/86 order to be a final, appealable order." (*Id.*).

██ We recognize that parties, even by express agreement, cannot confer jurisdiction on this court to entertain an appeal from something less than a final, appealable order which deals with all issues be-

---

**2.** This admission is unusual and inexplicable in view of the record before us; there is no clear evidence or even an inference as to whether or not plaintiffs carried property damage or collision insurance coverage on their vehicle.

tween all the parties to a controversy. 28 U.S.C. § 1291; *William B. Tanner Co. v. United States*, 575 F.2d 101 (6th Cir.1978). Once a notice of appeal has been filed, the district court ordinarily loses jurisdiction to make any further determinative ruling in the case which is the subject of the notice of appeal. *Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 764 F.2d 437 (6th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 346, 88 L.Ed.2d 293 (1985).

Plaintiffs have made it clear at all times in the district court that they take the position that this action is not governed by the MNFS. They make no claim under that statute, nor do they make a claim under any of its expressed exceptions. They simply assert instead that its limitations upon tort recovery were "not intended ... to pertain to non-residents of Michigan under the circumstances." (Plaintiff's Memorandum in support of plaintiffs' cross-motion for summary judgment, J/A A–62, A–63). In their brief in opposition to defendants' motion as one for "Summary Judgment" not partial summary judgment. (J/A A–75). Defendants' own responsive brief to plaintiffs' motion in the district court refers to their "motion for summary judgment," not for partial summary judgment. (J/A A–76). The latter also referred to purported deposition testimony of MacArthur Drake that "he thought his wife did have liability insurance on the motor vehicle but there was no collision coverage," and that Linda Drake stated "that she thought her vehicle was uninsured at the time." (J/A A–78).

While the question is not free from doubt, we conclude that plaintiffs expressly waived a property damage claim in the district court if the MNFS statute were held applicable to their causes of action set forth in their complaint. The district court order of October 6, 1986, therefore, did deal with all the issues before it and was an appealable order. Defendants' counsel's reference at oral argument to an amount which he felt may be owed to plaintiffs for property damage to their car was not a matter remaining before the district court for disposition. We therefore determine that there is jurisdiction for us to decide the merits of this appeal.

## II. APPLICABILITY OF MICHIGAN NO FAULT STATUTE

Plaintiffs do not seek personal injury protection benefits under the MNFS, but instead seek recovery under the common law tort of negligence. Plaintiffs claim that they were not required to maintain security for the payment of benefits under MNFS § 3102(1) because they were not operating a motor vehicle in the state for more than 30 days in the calendar year of 1984. MNFS § 3113(c) excludes such plaintiffs, who are not insured by an insurer who has filed a certification, from entitlement to the no-fault benefits. Thus, plaintiffs assert that MNFS totally excludes persons who are non-residents, travelling in the state for less than 30 days, and who do not carry insurance certified under the Act. They therefore seek a common law remedy for negligence. Plaintiffs interpret MNFS as permitting their common law remedy to remain available to them, relying upon *Shavers v. Kelley*, 402 Mich. 554, 267 N.W.2d 72 (1978), *cert. denied sub nom. Allstate Ins. Co. v. Kelley*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979) and the "rule of literalness" so that MNFS would apply only to tortfeasors and victims subject to the security requirement provisions of the statute. Plaintiffs argue that a common law tort remedy is still recognized in Michigan under MNFS, because there remains a continuing right to recover for loss of consortium. *See Cotton v. Minter*, 469 F.Supp. 199 (E.D.Mich.1979).

Defendants argue, on the other hand, that § 3135(1) establishes a "threshold" requirement for recovery for non-economic loss for tort liability in Michigan as to any plaintiff injured on Michigan highways. This threshold requires that plaintiff must first establish death, serious impairment of body funciton or permanent serious disfigurement as a result of the accident before there can be any recovery. Defendants claim that this threshold test applies to *all* plaintiffs whether insured or not. *See Shavers, supra; Bradley v. Mid–Century*

*Ins. Co.*, 409 Mich. 1, 294 N.W.2d 141 (1980). Since plaintiffs concede that no such threshold injury is here involved, defendants contend they are barred from recovering for non-economic injury, although defendants would admit liability for $400.00 in damages to the plaintiffs' motor vehicle under § 3135(2)(d) of MNFS as a specified exception to the total abolishment of all tort liability under § 3135(2) if properly asserted and proved by plaintiff.

Defendants emphasize that plaintiffs could have purchased insurance that complies with the Michigan no-fault requirements under § 3163[3] and then would have been permitted to recover for both personal injuries and property damage. Thus, defendants maintain that those who pay into the system may receive the benefits provided for by the Michigan Act, which is applicable to all who travel on Michigan's roads whether residents or non-residents. Defendants claim therefore that residency has no bearing on the applicability of § 3135.

Plaintiffs respond by urging that the purpose of the MNFS is to replace tort recovery with MNFS benefits for those complying with the statute. Plaintiffs claim that MNFS was not intended to exclude or deny recovery from those not bound by the MNFS, citing *Rusinek v. Schultz, Snyder & Steele Lumber Co.*, 411 Mich. 502, 309 N.W.2d 163 (1981) (because the Michigan legislature did not expressly extinguish plaintiffs' common-law right to recover in tort, it should not be deemed to have done so implicitly.) In *Rusinek*, the Michigan Supreme Court held that since the language of § 3135 did not expressly abolish the common law action for loss of consortium, it should decline to do so by implication. *Rusinek* held that permitting such a loss of consortium claim would not "contribute significantly to the problems the act was intended to alleviate", that is "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses through a system of compulsory insurance which would provide victims with benefits for

their injuries as a substitute for their common-law remedy in tort." 309 N.W.2d at 164–66. Yet, in *Rusinek*, the statute was simply interpreted to permit a spouse of one *who is seriously injured under § 3135(1)* to recover for loss of consortium. As explained in *Cotton v. Minter*, 469 F.Supp. 199, 201 (E.D.Mich.1979) "[n]o-fault's purpose was to litigate only cases where there are serious elements of noneconomic loss and bar those where such losses are small. Abolishing consortium would exclude no cases, and allowing it would not open the door to additional cases." Plaintiffs in this case do not claim severe injury and therefore do not fall within the provisions of § 3135(1). We do not, therefore, believe that the *Rusinek* exception is applicable.

*Gersten v. Blackwell*, 111 Mich.App. 418, 314 N.W.2d 645 (1981) considered whether non-resident motorists in an accident in Michigan with a defendant insured under a Michigan no-fault automobile insurance policy could recover under § 3135 of the Michigan No–Fault Act even though they suffered no serious impairment of a bodily function or a permanent serious disfigurement. *Gersten* found no problem with adhering to the MNFS statutory arrangement, holding that the non-resident motorists could not recover under the circumstances: "under Michigan's no-fault scheme, plaintiffs are denied personal injury protection benefits while simultaneously being prevented from pursuing tort remedies." 314 N.W.2d at 647.

Similarly, in *Berrien County Road Commission v. Jones*, 119 Mich.App. 315, 326 N.W.2d 495 (1982) the Michigan court held that a defendant truck driver had tort immunity under § 3135(2) where he had voluntarily obtained no-fault Michigan insurance coverage, although not required to do so, and was involved later in an accident with a claimant who had not chosen to participate voluntarily in the Michigan plan.

No evidence of a legislative intent to exclude nonresident owners of motor ve-

---

**3.** M.S.A. § 24.13163 [M.C.L. § 500.3163] (MNFS § 3163) provides in subsection (2) that "A non-

admitted insurer may voluntarily file the certification described in subsection (1)."

hicles appears. On the contrary, § 3102 *requires* defendants' compliance with the security requirements of no-fault after a 30–day period. The 30–day period is to protect tourists and other transient non-residents from the criminal sanctions imposed by the act.

326 N.W.2d at 496–97 (citation omitted) (emphasis in original).

It appears clear to us that under *Gersten* and the MNFS, plaintiff is denied the option of suing for common-law tort injury since the injuries claimed by plaintiffs to be attributable to defendants' negligence do not meet the threshold required under § 3135(1), and because the plaintiffs did not choose to participate and to pay into the Michigan system. We must next consider whether under the facts of this case MNFS, as deemed applicable to plaintiffs' claims, violates due process or equal protection rights or the right to travel and thus is unconstitutional in its application.

### III. IS THE MNFS, AS APPLIED, CONSTITUTIONAL

■ Plaintiffs argue that the MNFS is facially overbroad because it imposes the same civil penalties upon transient non-resident plaintiffs as it does upon persons bound by Michigan law to comply with §§ 3101–02 [M.C.L. §§ 500.3101, 500.3102] but who fail to meet these requirements—the forfeiture of any civil recovery. They claim that this overbreadth and limitation upon a right to recover damages infringes upon their constitutional right to travel and is unconstitutional on its face. *See Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Coates v. Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

Although the MNFS does impact upon travel within Michigan, it only does so through regulation of recovery for the negligence of another resulting in an automobile accident. Most states require motorists to carry insurance or furnish security in lieu of insurance as a necessary responsibility for the protection of all motorists while operating on the roads within that state. Such laws have been upheld as constitutional. See, *e.g., Williams v. Newton,* 236 So.2d 98 (Fla.S.Ct.1970); *Bookbinder v. Hults,* 19 Misc.2d 1062, 192 N.Y.S.2d 331 (1959). Plaintiffs complain about the loss of rights to recover civil damages, but they could have registered with the state, or they could have protected themselves by paying into the state's plan. In not taking these precautions, plaintiffs must look to their own insurance protection or their own resources for recovery of non-serious claims. Permitting plaintiffs under these circumstances to sue under common tort principles would circumvent the purpose of the MNFS. Michigan motorists or their insurance carriers would have to face litigation for non-serious injuries caused in an automobile accident contrary to the entire statutory scheme. Defendants argue that allowing plaintiffs to receive the benefits denied to those complying with MNFS would be unfair to all those who are required to pay into the plan.

We conclude that the MNFS does not penalize or punish plaintiffs for exercising their right to travel in the constitutional sense, but instead simply gives them options as to how they may want to protect themselves in the event, during a short visit, an accident occurs bringing about personal injuries within the State of Michigan. In view of the express purposes of MNFS and the growing and inhibiting expense of acquiring liability or other insurance absent such a law, we conclude that Michigan had a legitimate basis for its enactment, and that it is not unconstitutionally overbroad.

■ In a variation upon their charge of the statute's overbreadth, plaintiffs also contend that their equal protection rights have been violated because they have been treated differently from similarly situated persons under MNFS. The overbreadth argument is that the statute includes and abolishes tort remedies for a cognizant group, transient non-resident motorists. In asserting their equal protection claim, plaintiffs additionally contend that MNFS impermissibly distinguishes between resident and non-resident owners or registrants of motor vehicles operated within

Michigan for more than thirty days within a year, and transient non-resident motorists (those only within Michigan for 30 days or less within a year). Those in the first group are required to maintain their entitlement to MNFS benefits and therefore have a remedy if in compliance with MNFS. Those in the second group, however, within which plaintiffs fall, are equally in compliance with the statute's prescriptions should they opt for travelling in Michigan for thirty days or less without obtaining coverage under MNFS, but are left with no other remedy. Plaintiffs also challenge the difference in treatment between automobile tort victims and the victims of other torts to whom traditional tort remedies remain available.

■ Defendants respond that plaintiffs have misapprehended the classifications imposed by MNFS. They argue that MNFS § 3135 does not distinguish between automobile victims on the basis of Michigan residency but rather classifies victims according to the nature of their injury regardless of their residency, a classification which survived constitutional challenge in *Shavers v. Kelley*, 402 Mich. 554, 267 N.W. 2d 72, *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 303 (1979). Defendants are correct insofar as all automobile victims, regardless of residency, have no remedy if they are injured by a tortfeasor who has availed himself or herself of the benefits provided by MNFS when the victim has not complied with the statute. However, plaintiffs argue that they *have* complied with MNFS and essentially contend that the statute cannot constitutionally allow them as transient nonresident motorists to choose not to avail themselves of the statutory remedy while depriving them of common law tort remedies. This treatment infringes upon their fundamental right to travel plaintiffs urge, and the state must demonstrate a countervailing and compelling interest in maintaining such a differential in treatment, which impairs plaintiffs' protected right to migrate freely from state to state.

We will concede the issue is a close one for the reasons previously discussed. We, nevertheless, conclude that the impact of MNFS upon plaintiffs' right to travel is not sufficient to rise to the level of a constitutional violation. Accordingly, in the absence of a suspect classification, we must examine MNFS's system to determine whether it is rationally related to a legitimate legislative purpose. *McDonald v. Board of Election Comm'rs of Chicago*, 394 U.S. 802, 806–09, 89 S.Ct. 1404, 1407–09, 22 L.Ed.2d 739 (1969).

As previously stated, the abolishment of tort liability with some exceptions and its replacement with a system of compulsory insurance is rationally related to the legitimate legislative purpose of lowering insurance costs and providing "victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses ... as a substitute for their common-law remedy in tort." *Rusinek*, 309 N.W.2d at 164–66. Of course, in order for the system to remain fiscally sound and to spread its costs equitably, only those who bear the scheme's burdens should be the recipients of its benefits. Plaintiffs may not successfully contend that they are entitled to the benefits of MNFS without having borne its burdens, which might be one method of equating plaintiffs with the group with which they contend they are similarly situated. Rather, plaintiffs seek to avoid both the financial burden of MNFS and its abolition of tort liability as applied to them.

We conclude that the exception to the insurance or security requirements of MNFS carved out by the Michigan legislature for transient non-resident motorists, while continuing to make them subject to the general statutory scheme, has a rational basis and that the distinctions drawn are constitutional. As stated by the Michigan Court of Appeals in *Gersten:*

> This scheme, while encouraging compliance with the act on the part of a transient nonresident, does not go so far as to subject the nonresident to criminal sanctions. In this manner the legislation strikes a balance between the Legislature's interest in uniform application of the act to injuries arising out of motor

vehicle accidents in our state and the transient non-resident's interest in the operation of his vehicle in our state. 314 N.W.2d at 648.

Finally, plaintiffs claim that they have been arbitrarily denied access to Michigan courts to pursue their remedies in tort with no provision for a substitute remedy without due process of law. However, plaintiffs could have obtained MNFS benefits and chose not to do so. The statute simply allows, but does not require, transient nonresident motorists who wish to traverse Michigan's borders to come within the aegis of MNFS and to obtain the benefits for which it provides, while granting them a thirty-day period before subjecting them to criminal penalties for noncompliance with MNFS. We conclude that MNFS is constitutional on its face and as applied to plaintiffs under the circumstances.

The district court's grant of summary judgment in favor of defendants is accordingly affirmed.