# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 7, 2009

138085 & (75)
138116
138118

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

MARCHELLE LYNN THORN,
Personal Representative of the Estate
of LAURIE ANN GREENE, Deceased,
          Plaintiff-Appellee,

v

MERCY MEMORIAL HOSPITAL and
BLESSING B. NWOSU, M.D.,
          Defendants-Appellants,
and

S. AHADI, M.D., P.C., KIANOUSH
KHAGHANY, M.D., and TANVIR
IQBAL QURESHI, M.D.,
          Defendants-Appellees,
and

ASSOCIATES IN OBSTETRICS &
GYNECOLOGY, P.L.L.C., and FAMILY
MEDICAL CENTER, P.C.,
          Defendants.
_____/

SC: 138085
COA: 277935
Monroe CC: 05-020496-NH

MARCHELLE LYNN THORN,
Personal Representative of the Estate
of LAURIE ANN GREENE, Deceased,
          Plaintiff-Appellee,

v

MERCY MEMORIAL HOSPITAL
CORPORATION, TANVIR IQBAL
QURESHI, M.D., and BLESSING B.
NWOSU, M.D.,
          Defendants-Appellees,
and

SC: 138116
COA: 277935
Monroe CC: 05-020496-NH

S. AHADI, M.D., P.C., and KIANOUSH
KHAGHANY, M.D.,
                Defendants-Appellants,
and

ASSOCIATES IN OBSTETRICS &
GYNECOLOGY, P.L.L.C., and FAMILY
MEDICAL CENTER, P.C.,
                Defendants.
_____/

MARCHELLE LYNN THORN,
Personal Representative of the Estate
of LAURIE ANN GREENE, Deceased,
                Plaintiff-Appellee,

v

MERCY MEMORIANL HOSPITAL
CORPORATION, S. AHADI, M.D., P.C.,
KIANOUSH KHAGHANY, M.D., and
BLESSING B. NWOSU, M.D.,
                Defendants-Appellees,
and

TANVIR IQBAL QURESHI, M.D.,
                Defendant-Appellant,
and

ASSOCIATES IN OBSTETRICS &
GYNECOLOGY, P.L.L.C., and FAMILY
MEDICAL CENTER, P.C.,
                Defendants.
_____/

SC: 138118
COA: 277935
Monroe CC: 05-020496-NH

On order of the Court, the motion for leave to file brief amicus curiae is GRANTED. The applications for leave to appeal the December 11, 2008 judgment of the Court of Appeals are considered, and they are DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

YOUNG, J. (*dissenting*).

I respectfully dissent from the order denying defendants' applications for leave to appeal. At issue is whether household services of a decedent are "noneconomic damages" limited by MCL 600.1483. The jurisprudential significance of this issue is apparent: plaintiff seeks to recover more than $1.4 million for these damages, but § 1483 limits noneconomic damages to either $280,000 or $500,000. The Court of Appeals decision on this jurisprudentially significant issue is published and therefore binding

precedent on all future Court of Appeals panels, MCR 7.215(J)(1). Nevertheless, a majority of this Court has declined to review this issue. I respectfully dissent.

Plaintiff, as personal representative of the estate of the decedent, Laurie Ann Green,[1] alleged that defendants[2] committed medical malpractice during the treatment of the decedent that resulted in her death. Most pertinent to this appeal, plaintiff's complaint sought to recover damages for "Loss of services of plaintiff's decedent which necessarily includes the value of her services that plaintiff's decedent was accustomed to perform in the household; services ordinarily performed by plaintiff's decedent and special services uniquely performed by a mother."

Plaintiff retained Dr. Nitin Parajpne, an economics expert, who estimated a present value of $1,499,122 for the lost household services. In an affidavit, Dr. Parajpne explained that he used the American Time Use Survey (ATUS) and the hourly rate of a live-in aide to estimate that the loss of household services was valued at $225 a day. Dr. Parajpne further averred that the services he considered included: "physical care for children; playing and doing hobbies with children; reading to/with children; talking to/with children; helping with homework/education-related activities; attendance at children's events; taking care of children's health care needs' [sic] and dropping off, picking up, and waiting for children." Dr. Parajpne also included "secondary activities" done at the same time as one of the above activities, which would include, for example, cooking dinner.

Defendants sought summary disposition, arguing that the Wrongful Death Act (WDA)[3] precluded plaintiff from recovering for loss of household services and, in the alternative, if such damages were recoverable, they were "noneconomic damages" limited by MCL 600.1483. The trial court held that the loss of household services were recoverable under the WDA as "damages for . . . the loss of society and companionship of the deceased,"[4] but, as such, they were noneconomic damages limited by § 1483.

---

[1] See MCL 600.2922(2).

[2] In these consolidated appeals, the following defendants have sought leave to appeal in this Court: Mercy Memorial Hospital; Blessing B. Nwosu, M.D.; S. Ahadi, M.D., P.C.; Kianoush Khaghany, M.D.; and Tanvir Iqbal Qureshi, M.D.

[3] MCL 600.2922.

[4] See MCL 600.2922(6), which provides, in pertinent part:

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the

Plaintiff sought leave to appeal in the Court of Appeals, which granted leave and reversed. The Court held that plaintiff could recover lost household services under the WDA, but reversed the trial court and held that "plaintiff's claim for loss of services comprises an economic damage, which is not subject to the damages cap of MCL 600.1483."[5]

Defendants seek leave to appeal in this Court, arguing that damages for loss of household services are a "noneconomic loss" limited by MCL 600.1483. "Noneconomic loss" is defined in § 1483 as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss."[6] The primary issue is whether loss of household services is an "other noneconomic loss."

Defendants' argument has support in our caselaw. "Consortium is defined as including 'society, companionship, *service*, and all other incidents of the marriage relationship.'"[7] Moreover, "[i]t is undisputed that loss of consortium is a noneconomic loss."[8] In *Montgomery v Stephan*,[9] in which this Court recognized a wife's loss of consortium claim for injury to her husband, this Court eloquently addressed the fool's errand of partitioning consortium into economic or noneconomic categories:

> To a large degree, the objection in the cases to allowing the wife recovery for loss of consortium turns directly or indirectly upon the aspect of consortium just mentioned, that of material services. . . .
>
> The argument thus made involves 2 fundamental errors. The first is that the concept of consortium, of conjugal fellowship, is capable of dismemberment into material services and sentimental services. Is the well kept home or the carefully prepared meal a manifestation of affection (*i. e.*, a sentimental service) or of the skilled performance of a menial chore (*i. e.*, a material service)? Does the well-trained child know anything of sentimental services? Of material services? Of both? Are they different?

> period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased.

[5] *Thorn v Mercy Mem Hosp Corp*, 281 Mich App 644, 667 (2008).

[6] MCL 600.1483(3).

[7] *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 504 (1981) (emphasis added), quoting *Washington v Jones*, 386 Mich 466, 472 (1971).

[8] *Rusinek*, *supra* at 505.

[9] 359 Mich 33 (1960).

Which is which? The fact of the matter is that the effort to break down consortium into its component parts is no more than a theoretician's boast, the modern counterpart to the medieval resolution of the number of angels able to dance on the head of a pin. It requires a wisdom, and an effrontry, far greater than ours to make differentiations so subtle, if, indeed, they are within the realm of human competence.

The second fundamental error in the objection made is that (assuming we can and do make the theoretical differentiation described) the law does not permit recovery for the sentimental aspect alone of consortium. . . . . The fact of the matter is that there is no predominant element in the concept of consortium, that consortium is not capable of subdivision, and that it is not necessary that there be an allegation of the loss of any particular "element" thereof.[10]

Here, as averred by plaintiff's expert, the following lost household services are economic losses: physical care for children; playing and doing hobbies with children; reading to/with children; talking to/with children; helping with homework/education-related activities; attendance at children's events; and taking care of children's health care needs and dropping off, picking up, and waiting for children. These lost services are acutely similar to the "well kept home or the carefully prepared meal" pondered in *Montgomery*.

The Court of Appeals cited a product liability statute that defines "economic loss," in part, as "costs of obtaining substitute domestic services."[11] In the absence of a specific statutory provision defining "economic loss" for the purposes of § 1483, however, defendants have a strong argument that the common-law definition of consortium, which includes lost services and "indisputably" constitutes noneconomic damages, must be included as "other noneconomic loss."

Indeed, at minimum, the Court of Appeals decision, which permits plaintiff to place a dollar value on a mother's attendance at her child's events, seems over-broad. Thus, not only does the Court of Appeals decision threaten to defeat the purpose of the noneconomic loss cap, it also devalues the relationship that family members share with one another. This Court ought to address the point it made in rejecting the objectification of consortium in *Montgomery*. Does the Court of Appeals analysis "require[] a

---

[10] *Id.* at 42-44.

[11] MCL 600.2945(c).

wisdom, and an effrontry, far greater than ours to make differentiations so subtle, if, indeed, they are within the realm of human competence"?[12]

Accordingly, I would grant leave to appeal to further review this issue.

CORRIGAN and MARKMAN, JJ., join the statement of YOUNG, J.

---

[12] *Montgomery*, *supra* at 43.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 7, 2009

Clerk