AMBS v KALAMAZOO COUNTY ROAD COMMISSION

Docket No. 230107. Submitted February 18, 2003, at Detroit. Decided March 13, 2003, at 9:00 A.M. Leave to appeal sought.

Michael L. and Joann L. Ambs and others brought an action in Kalamazoo Circuit Court against the Kalamazoo County Road Commission and the Kalamazoo Board of County Road Commissioners, seeking a declaration that Cooks Drive in Comstock Township was a public road and that it must be recertified as a public road. The defendants asserted that Cooks Drive had been abandoned by nonuse since the 1950s and that the defendants were not required to recertify Cooks Drive as a public road. The court, Richard R. Lamb, J., concluded that Cooks Drive had been abandoned by nonuse by the defendants, and was no longer a public road. The plaintiffs appealed.

The Court of Appeals *held*:

1. MCL 224.18, at the time relevant to this case, did not provide the exclusive means by which a governmental entity, in this case the defendant road commission and its board, could affirmatively abandon a public road. Rather, the common-law theory of abandonment by nonuse remained an alternative for the abandonment of a public road.

2. While the circuit courts are without jurisdiction to affirmatively vacate or otherwise abandon a road, those courts nonetheless have the power to hear and decide claims in which it is alleged, as here, that a county road commission has through its own conduct abandoned a public roadway.

3. To prove abandonment under the common-law theory of abandonment by nonuse, both an intent to relinquish the property and external acts putting that intention into effect must be shown by the party asserting abandonment.

4. The trial court's conclusion that the defendants had abandoned Cooks Drive by nonuse was not against the great weight of the evidence. The evidence revealed that the defendants had decertified Cooks Drive in the 1950s after it was severed by the construction of an interstate, had maintained the road on only a few occasions since that time, and had continuously disclaimed any responsibility for Cooks Drive. Furthermore, the plaintiffs had

exercised dominion and control over Cooks Drive in numerous ways, including plowing and maintaining the road, as well as closing the road by placing a gate across its entrance. Thus, the trial court did not clearly err in determining that the requisite intent to relinquish the property, and external acts putting that intention into effect, were established.

5. The plaintiffs' argument that in applying the theory of common-law abandonment by nonuse, the focus must be on the accessibility and use of the road, was not supported by case law.

Affirmed.

COUNTIES — PUBLIC ROADS — ABANDONMENT.

MCL 224.18 does not provide the exclusive means by which a board of county road commissioners can affirmatively abandon a public road; the common-law theory of abandonment by nonuse remains an alternative method of abandonment of a public road.

*Wright & Phillips, P.C.* (by *Julie K. Phillips*), for the plaintiffs.

*Lewis Allen, P.C.* (by *Anne M. Fries*), for the defendants.

Before: COOPER, P.J., and BANDSTRA and TALBOT, JJ.

BANDSTRA, J. Plaintiffs Michael L. and Joann L. Ambs, Harry B. and Helen L. Miller, and Billy L. and Virginia V. Wallace appeal as of right from the trial court's opinion and order declaring Cooks Drive, a one-quarter mile stretch of dead-end road in Comstock Township, to have been abandoned by defendants Kalamazoo County Road Commission and Kalamazoo Board of County Road Commissioners and, therefore, no longer a public road.[1] We affirm.

---

[1] Cooks Drive is also known as Cooks Road.

I. BASIC FACTS AND PROCEDURAL HISTORY

Before construction of I-94 in 1951, Cooks Drive was a public road that extended approximately one-half mile north from ML Avenue to what is presently known as L Avenue.[2] After being severed by the construction of the interstate, that portion of Cooks Drive located north of the new highway was abandoned by defendants through a resolution adopted and recorded pursuant to the procedures set forth in MCL 224.18. Although no similar resolution abandoning Cooks Drive south of the interstate exists in the county records, it is not disputed that after 1951 defendants no longer certified that portion of Cooks Drive for purposes of receiving state maintenance funds and performed little, if any, maintenance along that strip of road.

Following construction of I-94, the property abutting Cooks Drive south of the highway[3] consisted solely of wooded or open fields until February 1969 when plaintiffs Harry and Helen Miller broke ground on construction of a new home, despite being informed by defendants that Cooks Drive had been decertified and would not be maintained. Plaintiffs William and Virginia Wallace, with similar knowledge, constructed their home on Cooks Drive in April 1988.[4]

In September 1989, the Wallaces and the Millers joined with Lon and Lou Ann Grovers, who owned a

---

[2] Although challenged by defendants below, on appeal, defendants do not dispute the public nature of Cooks Drive before construction of I-94.

[3] This is the only portion of Cooks Drive at issue, and we will simply refer to it hereinafter as "Cooks Drive."

[4] Although the home constructed by the Wallaces has an address on ML Avenue, access to the homes of both the Millers and the Wallaces is had by way of a driveway off Cooks Drive.

large, vacant parcel located at the end of Cooks Drive near the highway right-of-way, in seeking a variance from a Comstock Township ordinance that prohibits construction of a single-family home on property that does not have frontage on a publicly maintained road. After learning that defendants' considered Cooks Drive to have been abandoned and no longer a public road, the Comstock Township Zoning Board of Appeals denied the variance requests.

In July 1994, the Grovers sold their parcel on Cooks Drive to plaintiffs Michael and Jo Ann Ambs. After the Ambses' request for a similar variance was peremptorily denied, plaintiffs met with defendants' representatives to discuss recertification of Cooks Drive. At that time plaintiffs were informed that unless they could prove that Cooks Drive remained a public road, they would have to share in the cost of bringing the road up to current county standards before it would be recertified. Relying on the absence of any record indicating that the southerly portion of Cooks Drive had been formally abandoned after its acceptance into the county road system under the McNitt Act[5] in 1935, plaintiffs claimed that Cooks Drive remained a public road and, therefore, declined to participate in the financing of any improvements. The instant suit, seeking an order declaring Cooks Drive to be a public road and requiring recertification, followed.

Before trial, plaintiffs moved to preclude defendants from asserting abandonment of Cooks Drive under the common-law theory of abandonment by nonuse, arguing that MCL 224.18 provides the exclu-

---

[5] 1931 PA 130, repealed by 1951 PA 51, § 21.

sive means by which a board of county road commis-
sioners may affirmatively abandon a road. Plaintiffs
argued, among other things, that although the com-
mon-law theory of abandonment by nonuse may
remain viable as a tool to quiet title to a roadbed in
favor of a private person or organization, it was clear
that by enacting and repeatedly amending MCL 224.18
to afford additional protections to private interests,
the Legislature intended to abrogate use of that the-
ory by governmental entities such as defendants. In
support of this claim, plaintiffs noted that in no case
recorded since the enactment of MCL 224.18 in 1909,[6]
had the theory of common-law abandonment by non-
use been asserted by a governmental entity. The trial
court, however, denied that motion, stating:

> It's very disappointing that a body that's supposed to
> debate public policy . . . doesn't even mention what they're
> doing with a doctrine that's been in existence for a hundred
> years. So I'm waiting for the roof to open and the light to
> shine through and enlighten me. But I don't think it's going
> to happen. So, hence, I think you have a controversy.
>
> True, the cases are in the context of private citizens; but
> does that necessarily mean that that theory only applies to
> private citizens? I don't think so.
>
> The concept came up in the context of a private citizen,
> but the theory is a theory. And if the Legislature said, okay,
> we have decided that it's better public policy that the road
> commission or governmental entities follow this specific
> procedure to the exclusion of all others, they could have
> said so. They didn't say it; so, consequently, in Kalamazoo
> County at 10:00 A.M. on February 21 of 2000, we're address-
> ing the question.

---

[6] See 1909 PA 283, § 18.

* * *

> But until some court says that common law abandonment is no longer a viable option—and when I say court, I mean some appellate court—then I'm not going to declare myself to be the Legislature and say, here, I'm going to step in and fill in the blanks that they left; and I'm going to ignore all these cases that recognize the common law doctrine; and I today, am going to decide that I'm going to stand all this law on its head. I'm not going to do that.
>
> So I guess that's a simple way of telling you that the . . . motion to strike a defense, I'm not going to strike it because it's viable, according to the reported authorities.[7]

Defendants were thus permitted at the ensuing trial to present both evidence and argument concerning common-law abandonment by nonuse. Following closing arguments, the trial court found that Cooks Drive became a public road upon acceptance into the county road system under the McNitt Act in 1935, and if not then, by highway by user after ten years of public use and maintenance under MCL 221.20a. However, relying on the common-law theory of abandonment by nonuse, the trial court further concluded that

---

[7] In reaching this conclusion the trial court relied, in part, on *Cheboygan Co Road Comm v Crawford*, unpublished opinion per curiam of the Court of Appeals, issued September 30, 1997 (Docket No. 185583). In that case, the majority applied the common-law theory of abandonment by nonuse to affirm the lower court's denial of a request by the Cheboygan County Road Commission to enjoin the defendant landowner from blocking public access to an unimproved public right of way. Slip op at 1-2. In doing so, the majority impliedly rejected the dissent's claim that MCL 224.18 provided the exclusive means by which a board of county road commissioners could abandon a county road. Slip op at 3. Although defendants rely heavily on this case as support for their claim that this Court has approved application of common-law abandonment in circumstances similar to that at issue here, as an unpublished opinion in which abandonment was not claimed by the road commission, and in which the majority only impliedly rejected exclusive application of MCL 224.18, *Cheboygan* is of neither precedential nor persuasive value on the issue presently before this Court. MCR 7.215(C)(1).

defendants had abandoned Cooks Drive as a public road "following its bisection by I-94." It is from this latter decision that plaintiffs now appeal.

## II. COMMON-LAW ABANDONMENT AND MCL 224.18

Plaintiffs argue that the trial court erred in failing to conclude that the procedures set forth in MCL 224.18 provide the exclusive means by which defendants could affirmatively abandon Cooks Drive. In doing so, plaintiffs first assert that while the common-law theory of abandonment by nonuse may remain viable as a tool to quiet title to a roadbed in favor of a private person or organization, it is clear that by enacting and repeatedly amending MCL 224.18 to afford additional protections to private interests, the Legislature intended to deny use of that theory by governmental entities. We disagree.

Whether the procedures set forth in MCL 224.18 provide the exclusive means by which defendants could affirmatively abandon Cooks Drive is a matter of statutory interpretation and is, therefore, a question of law reviewed de novo. *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 469; 628 NW2d 577 (2001). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature, *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998), and the first criterion in determining such intent is the specific language of the statute, *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). The Legislature is presumed to have intended the meaning it plainly expressed. *Pohutski v Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002).

At the time defendants claim to have abandoned Cooks Drive under the common-law theory of abandonment by nonuse, specifically, when that road was bisected by construction of I-94 in the early 1950s,[8] MCL 224.18 provided, in relevant part:

The board of county road commissioners of any county which has adopted the county road system is hereby authorized and empowered to, at any time, either relinquish jurisdiction of or absolutely abandon and discontinue any county road, or any part thereof, by a resolution adopted by majority vote. The vote of the county road commissioners in respect to either such relinquishment of jurisdiction or absolute abandonment and discontinuance shall be taken and entered, and notice thereof be given, in the same manner as required in this section, in cases in which county roads are adopted. . . . Said board shall, at the time of the passage of any resolution to absolutely abandon and discontinue any portion of any highway under its jurisdiction, determine in said resolution that it is to the best interests of the public that said highway or portion thereof shall be absolutely abandoned and discontinued. Said board shall cause a true copy of every resolution or other proceeding, containing an accurate description of the lands comprising the highway or portion thereof which has been absolutely abandoned and discontinued thereby, to be recorded in the

---

[8] The statute has since been significantly revised. For example, the language that previously "authorized and empowered" a board of county road commissioners to statutorily abandon a road has been deleted; the statute now simply states that a board "may" do so. MCL 224.18(3). Further, while the statute has consistently provided that, except under certain conditions, a "board of county road commissioners shall not absolutely abandon or discontinue any highway," under the statute in effect here, this limitation only applied to highways with buildings. See 1952 PA 96, § 18. Thus, this language was not applicable here, there being no buildings on Cooks Drive in the 1950s when abandonment occurred. The language limiting this prohibition to roads along which a building was located has been removed. See 1996 PA 218, § 18 and MCL 224.18(4). We offer no opinion on the effect, if any, of these statutory changes on the issue presented.

office of the register of deeds for the county wherein the
lands are situated . . . . [1952 PA 96, § 18.]

Plaintiffs' assertion that adherence to the statutory
procedures set forth above was required for a valid
abandonment of a county road reads too much into
the plain language of the statute. Although the statute
"authorized" and "empowered" a board of county
road commissioners to absolutely abandon any
county road by resolution adopted by majority vote,
nothing in the plain language of the text required
such a vote, and it is only upon such vote and resolu-
tion that the remaining procedures, i.e., notice,
recording, and a determination that abandonment is
in the best interests of the public, were required.[9]

In reaching this conclusion, we reject plaintiffs'
reliance on *Village of Bangor v Bangor Twp*, 324
Mich 665; 37 NW2d 666 (1949), and *Baker v Roscom-
mon Co Rd Comm*, 329 Mich 671; 46 NW2d 579
(1951), for the proposition that the statutory proce-
dures set forth in MCL 224.18 have previously been
determined by our Supreme Court to be mandatory.
In *Bangor, supra*, relying on the defendant board of
county road commissioners' acknowledgement that
the proceedings used in attempting to relinquish its
jurisdiction over a bridge located in the Village of
Bangor "were not sufficient for the purpose
intended,"[10] our Supreme Court held that because the

---

[9] Not only does this interpretation of the statute comport with the plain
language of the text, but it is also consistent with the well-established
principle that statutes in derogation of the common law are to be nar-
rowly construed. *Rusinek v Schulz, Synder & Steele Lumber Co*, 411 Mich
502, 507-508; 309 NW2d 163 (1981).

[10] Apparently, although it adopted a resolution to relinquish jurisdiction
over the subject bridge, the board failed to notify the township of its
intent, as required by MCL 224.18. See *Bangor, supra* at 667, citing *Village*

"mandatory" requirements of MCL 224.18 were not met by the board, the board retained sole responsibility for maintenance and control of the bridge. *Bangor, supra* at 669. In so holding, however, the Court did not determine that a board of county road commissioners is required to follow the procedures set forth in MCL 224.18 in order to affirmatively abandon a roadway under its jurisdiction. Rather, the Court merely determined that once a board of county road commissioners undertakes to abandon a county road (or bridge) by resolution, compliance with the remaining requirements of MCL 224.18 is mandatory. Indeed, as indicated above, the plain language of the statute requires adherence to its procedures once a resolution to abandon or discontinue a county road has been adopted by a majority vote of the board. Accordingly, because the instant case does not involve such a resolution, *Bangor* is irrelevant to the issue presently before this Court.

*Baker, supra,* is similarly inapposite to the position asserted by plaintiffs. There, the plaintiff landowners sought to enjoin the county road commission from opening the northern portions of two roads dedicated to public use by plat but never improved. *Id.* at 679. In reversing the trial court's determination that, because the dedications had never been accepted the roadways were "no longer public streets," the Supreme Court noted that acceptance of the entirety of both dedications had been established by evidence of public use and expenditure with respect to the southern portions of the subject roadways. *Id.* at 680-

_____

*of Breedsville v Columbia Twp*, 312 Mich 47, 50, 56-57; 19 NW2d 482 (1945).

682. The Court further observed that to affirm the trial court would, "in effect," permit plaintiffs to "accomplish[] the vacating of the respective portions" by way of injunction, a proposition the Court found troubling in light of the procedures set forth in MCL 224.18:

> The statute . . . provides in express terms the method by which a highway may be vacated; and the provided procedure should not be circumvented by resort to injunctive proceedings, as attempted by plaintiffs in the instant case. [*Baker, supra* at 680.]

Relying on the above-quoted language, plaintiffs cite *Baker* as authority for the proposition that the procedures set forth in MCL 224.18 are mandatory. We note, however, that the Court's statement regarding MCL 224.18 was not central to its decision to reverse the trial court's grant of an injunction. As indicated above, the Court premised its decision on the trial court's erroneous findings regarding acceptance of the dedications. Moreover, because there was evidence of seasonal public use of the disputed portion of at least one of the subject roadways to access a lake along the northern edge of the plat, *Baker, supra* at 680-681, the assertion of common-law abandonment by nonuse was likely not a viable option for plaintiffs and, therefore, the applicability of that theory was neither raised by the parties nor considered by the Court.

Plaintiffs' reliance on *In re Petition of Miller*, 18 Mich App 480; 171 NW2d 473 (1969), for the proposition that a county road may be abandoned only upon a vote by the board of county road commissioners is similarly misplaced. In that case, the petitioner filed

suit in the circuit court seeking to have a street and alleyway vacated under provisions of the Plat Act of 1929 authorizing the circuit court to vacate, revise, or otherwise alter any recorded plat. See 1929 PA 172, §§ 59-66, repealed by 1967 PA 288, § 292.[11] The trial court, however, denied the petitioner's request after concluding that, because the roadways were under the jurisdiction and control of the board of county road commissioners, it lacked the power to vacate those ways under § 66 of the act, which provided that "[t]he vacating of any plat or any part thereof shall not vacate any part of a state or county road." 1929 PA 172, § 66.[12] Citing both § 66 of the act and MCL 224.18, this Court agreed, stating that "county roads may be vacated only upon vote of the board of county road commissioners." *Miller, supra* at 482. Although when cited in isolation, as the plaintiffs here do, the Court's comment in this regard seems persuasive to the issue at hand, as in both *Bangor, supra,* and *Baker, supra,* the Court in *Miller* was not presented with the question whether common-law abandonment could apply to work a forfeiture of public rights in the subject rights-of-way and, therefore, did not consider that issue. Rather, at issue in *Miller* was the circuit court's power to vacate county-controlled streets and alleyways in an action brought under the provisions of the Plat Act of 1929, a jurisdictional question not presented by the facts of this case. Accordingly, neither the facts nor the analysis

---

[11] Although the Plat Act of 1929 was replaced by the Subdivision Control Act in 1967, see 1967 PA 288 (now known as the Land Division Act, 1996 PA 591), the latter act continues to permit circuit court actions to vacate or otherwise alter a plat, MCL 560.221, 560.222.

[12] This provision was similarly retained in the Land Division Act. See MCL 560.226(1)(b).

presented by the Court in its opinion are instructive on the issue here and we, therefore, find it of little persuasive value in deciding the case at bar.

We similarly reject plaintiffs' claim that by amending MCL 224.18, which when first enacted in 1909 authorized abandonment merely upon a majority vote adopting a resolution to abandon,[13] to include such requirements as notice and recording of the resolution, the Legislature has indicated an intent to deny governmental entities the right to assert the common-law theory of abandonment by nonuse. Plaintiffs assert that the additional "protections" afforded to private interests by these amendments make clear a legislative intent to abrogate the "out-dated" theory of common-law abandonment. However, as discussed above, legislative intent must be gleaned from the specific language employed in the statute. *In re MCI, supra; Pohutski, supra.* Moreover, it is well established that "statutes in derogation of the common law must be strictly construed, and will not be extended by implication to abrogate established rules of common law." *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 507-508; 309 NW2d 163 (1981). As noted above, under the plain language of the statute at issue here, the additional "protections" afforded through amendment by the Legislature come into play only when a resolution to abandon is adopted by the board, which itself is not required. Accordingly, to read the amendments as evidence of a legislative intent to require adherence to the statute itself would be neither reasonable nor logical.

---

[13] See 1909 PA 283, § 18.

Plaintiffs also argue that because any decision to abandon a county road directly effects the property interests of those who own land abutting that road, both public policy and procedural due process require that the procedures set forth in MCL 224.18 be followed. This Court, however, is not the proper forum in which to debate the wisdom of the Legislature in failing to expressly require adherence to MCL 224.18. As noted by the trial court, where the language of a statute is clear, it is not the role of the judiciary to second-guess a legislative policy choice; a court's constitutional obligation is to interpret, not rewrite, the law. See *Hanson v Mecosta Co Road Comm'rs*, 465 Mich 492, 504; 638 NW2d 396 (2002) (noting that a court's function in interpreting a statute is not "to independently assess what would be most fair or just or best public policy," but "to discern the intent of the Legislature from the language of the statute it enacts"). Moreover, although plaintiffs are correct that the federal and Michigan constitutions guarantee that no person will be deprived of life, liberty, or property without due process of law, US Const, Am V; Const 1963, art I, § 17, plaintiffs fail to explain how, when no one of them possessed such an interest at the time Cooks Drive was abandoned by defendants in the early 1950s, defendants use of the common-law theory infringed upon any protected right. An appellant may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998). In any event, because the plaintiffs here were aware of defendants' position concerning Cooks Drive at the time they purchased or divided their property along that stretch of

road, they should not now be heard to complain on the ground of a failure of due process.

Finally, plaintiffs argue that because MCL 224.18 grants a county road commission "sole and exclusive jurisdiction" over those roads that have been adopted into its road system, the trial court was without jurisdiction to enter an order decreeing Cooks Drive to be abandoned. However, while plaintiffs are correct that the circuit courts are without jurisdiction to affirmatively vacate or otherwise abandon a road, see *In re Petition of Wernicke*, 331 Mich 91, 95; 49 NW2d 76 (1951), and *Miller, supra*, those courts nonetheless have the power to hear and decide claims in which it is alleged, as it is here, that a county road commission has through its own conduct abandoned a public roadway. See, generally, *Richey v Shephard*, 333 Mich 365; 53 NW2d 487 (1952), *Meyer v Meldrum*, 237 Mich 318; 211 NW 658 (1927), and *Roebuck v Mecosta Co Rd Comm*, 59 Mich App 128; 229 NW2d 343 (1975). Accordingly, we reject plaintiffs' contention that the trial court was without jurisdiction to enter the order at issue here.

### III. APPLICATION OF COMMON-LAW ABANDONMENT BY THE TRIAL COURT

Plaintiffs argue that the trial court's conclusion that defendants abandoned Cooks Drive under the common-law theory of abandonment by nonuse was against the great weight of the evidence. We disagree.

This Court reviews a trial court's findings of fact in a bench trial for clear error and reviews de novo its conclusions of law. *Chapdelaine v Sochocki*, 247 Mich

App 167, 169; 635 NW2d 339 (2001).[14] A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). An appellate court will give deference to "the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Rellinger v Bremmeyr*, 180 Mich App 661, 665; 448 NW2d 49 (1989).

A roadway established for public use may cease to be such by voluntary abandonment and nonuse. See *Meyer, supra* at 322. To prove such abandonment, both an intent to relinquish the property and external acts putting that intention into effect must be shown by the party asserting abandonment. *Roebuck, supra* at 132.[15]

In its written opinion and order, the trial court found that these elements had been established. The

---

[14] In *Hadfied v Oakland Co Drain Comm'r*, 430 Mich 139, 187 n 26; 422 NW2d 205 (1988), overruled on other grounds *Pohutski, supra*, the Michigan Supreme Court observed that "a 'great weight of the evidence' challenge would seem to be irrelevant in the bench trial setting," a proposition this Court has impliedly acknowledged by addressing a "great weight of the evidence" argument in a bench trial under the "clearly erroneous" standard. See *Phardel v Michigan*, 120 Mich App 806, 811-813; 328 NW2d 108 (1982). Therefore, we will address plaintiffs' "great weight" argument under the "clearly erroneous" standard.

[15] Contrary to plaintiffs' assertion, under the facts of this case proof of voluntary abandonment by nonuse does not also require a showing that the use for which the subject property was dedicated "wholly fails." This additional requirement, advanced by plaintiffs as lacking here, has been applied by the courts only in circumstances where it was asserted that land—including that on which streets and other roadways run—dedicated to public use by plat had been abandoned. See, e.g., *Richey, supra* at 370; *Kirchen v Remenga*, 291 Mich 94, 113; 288 NW 344 (1939); *Elias Bros, Inc v Hazel Park*, 1 Mich App 30, 35; 133 NW2d 206 (1965). Accordingly, because Cooks Drive was not dedicated by plat, the trial court did not err in failing to consider this additional requirement.

court noted that following construction of I-94 in 1951, it is uncontested that defendants ceased to include Cooks Drive in certification maps submitted to the department of transportation. The trial court further found that the county had not maintained Cooks Drive since its decertification. Instead, the court noted, the plaintiffs who have homes on Cooks Drive had exercised dominion and control over Cooks Drive through a number of acts, including plowing, maintaining and resurfacing the road, closing the road by placing a gate across it,[16] stopping a construction company from using Cooks Drive in the absence of an agreement from the company to resurface it, and petitioning the commission for recertification of Cooks Drive. The trial court further noted that when approached by various landowners to recertify the road,[17] the county's position had been that the road was decertified, and would not be recertified and taken back into the county road system.

Plaintiffs argue that the trial court erroneously relied on defendants' failure to certify or maintain Cooks Drive as evidence of their intent to abandon that road. In doing so, plaintiffs assert that such failures amount to nothing more than neglect of the road, and shed no light on the intent necessary to support abandonment under the common-law theory of nonuse. We disagree.

The trial court did not focus solely on defendants' failure to certify or maintain Cooks Drive in determining defendants' intent. In its opinion and order, the

---

[16] This gating was done with the acquiescence of the county who raised "no objection" to the use of the right of way "for private drive purposes."

[17] We note that the first request for such recertification was made in 1968 before the first establishment of a residence along the road.

trial court recognized that "[t]he mere fact that Cooks [Drive] was decertified in 1952 does not in and of itself establish abandonment," and specifically premised its finding on the "totality" of defendants' conduct. This conduct, as demonstrated by the evidence presented at trial, included defendants' failure to certify or maintain Cooks Drive, as well as their express denials regarding responsibility for, and acquiescence to, plaintiffs' assertion of dominion and control over that road. Contrary to plaintiffs' assertion, defendants' conduct in this regard constituted affirmative, conscious decisions to relinquish any jurisdiction over Cooks Drive, and not mere failure to act or neglect. Testimony at trial established that following construction of I-94 in 1951, the Kalamazoo County Road Commission (KCRC), for whatever reason, elected to remove Cooks Drive from the certification rolls submitted to the state, and since that time has continued to exclude that short, dead-end strip of road from the mileage submitted by the KCRC board upon yearly affirmative vote. The communication and conduct of the KCRC to potential builders, purchasers, and the public in general are also affirmative declarations indicating that defendants' consciously decided to abandon Cooks Drive after that road was severed by construction of the interstate in 1951.

We also reject plaintiffs' assertion that "there was no clear and convincing evidence that Cooks Drive was no longer maintained" by defendants after 1951. Plaintiffs' assertion in this regard is premised upon the testimony of Harold Heath, who testified at trial that he witnessed work done by the KCRC along Cooks Drive on at least three occasions following severance of that road by I-94. In its written opinion and order,

however, the trial court expressly considered and dismissed Heath's testimony in this regard as not credible on the basis of Heath's inability on cross-examination to positively identify the vehicles and crews alleged to have conducted the maintenance as those of the KCRC. Even were the trial court to have afforded any significant weight to Heath's testimony, such infrequent and minor maintenance as testified to by Heath is insufficient to establish a continued claim of jurisdiction over Cooks Drive by defendants. See, e.g., *Keller v Locke*, 62 Mich App 591, 592-593; 233 NW2d 666 (1975) (infrequent and minor maintenance will not make a public highway out of a private road).

Finally, plaintiffs generally contest the trial court's factual conclusions, arguing that the trial court misinterpreted the few letters available from county officials to plaintiffs and others, and misjudged the credibility of witnesses, or particular parts of witnesses' testimony, at trial. We have reviewed the record at length. While another fact-finder might have reached a conclusion more to plaintiffs' liking, we are not left with a definite and firm conviction that the trial court here made a mistake in its findings, *Walters, supra,* especially giving appropriate deference to the trial court's superior ability to judge the credibility of the witnesses and their accounts of what occurred. MCR 2.613(C); *Rellinger, supra.* We do not conclude that the trial court clearly erred in determining that the requisite intent to relinquish the property and external acts putting that intention into effect were established at trial. *Roebuck, supra.*

Plaintiffs also argue that a review of the cases applying the theory of common-law abandonment by nonuse reveals that the question of abandonment

focuses on "the accessibility and use of the road, and that as long as the public can manage to utilize the road in some degree, the road will not be considered abandoned." We disagree.

In support of their "accessibility and use" argument, plaintiffs rely on a number of cases, none of which can reasonably be read to stand for the proposition stated. Although plaintiffs are correct that in *Grand Trunk W R Co v Flint*, 55 F2d 384 (ED Mich, 1932), the court applied the common-law theory of abandonment by nonuse to find that the defendant city had abandoned a portion of a city street on which the plaintiff railroad company had build its depot, the court's holding in this regard was not premised on the fact that the depot obstructed the street at issue. *Id.* at 385-386. Indeed, the depot had been removed a number of years before the plaintiff filed its suit seeking to enjoin the city from constructing a motor-vehicle crossing across the plaintiff's tracks at the site of the old depot. *Id.* at 386-387. The court's decision, rather, was based on its conclusion that the city had acquiesced to the plaintiff's construction of the depot on the city's right-of-way, and the resulting twenty-year period of nonuse by the public. *Id.* at 387.

Similarly, the Michigan Supreme Court's decision finding abandonment of a public way in *Meyer*, *supra*, offers no support for the proposition that the question whether a roadway has been abandoned under the common-law theory of abandonment by nonuse turns on the accessibility of the road at issue. Although in that case the Court relied heavily on the fact that a number of obstructions, such as trees, a dike, and an elevated rail system, had been placed on the right-of-way claimed to be established for public

use, the Court merely cited the defendant township's knowledge of the placement of these obstructions as evidence of the township's intent to abandon public use of the right of way. *Id.* at 320-322. In doing so, however, the Court did not even imply that the existence of such obstructions are a prerequisite to finding abandonment of a public way. Moreover, in *Gardens of Rest, Inc v Upper Michigan Power & Light Co*, 322 Mich 153; 33 NW2d 741 (1948), although the Court found that the construction of a cemetery across a public highway was insufficient to support a finding that the highway had been abandoned, the Court expressly prefaced its conclusion by stating that it was "not concerned with the right of the public in general as to the use of the road at the present time," but rather only with the question whether the defendant power company retained its right to erect power lines along that right-of-way under a license granting the defendant the right to run such lines along township roads. *Id.* at 155, 157. Given this statement, *Gardens of Rest* cannot be reasonably read to support the implication, asserted by plaintiffs here, that an even more drastic obstruction of the way must exist before abandonment under the common-law theory of nonuse can be found.

Plaintiffs reliance on both *Baker, supra,* and *Roebuck, supra,* for the proposition that any conceivable use of a roadway by the general public precludes a finding of abandonment, is similarly misplaced. While it is true that in both cases the reviewing courts found that use of the subject ways by the public to access hunting grounds and a lake were factors that precluded a finding that the roadways had been abandoned, such use was apparently of a current and fre-

quent nature. See *Baker, supra* at 681; *Roebuck, supra* at 130, 132. No such current or frequent use by the public in general is alleged of the road at issue here, and nothing in the Courts' opinions in *Baker* or *Roebuck* suggests that intermittent public use of a roadway will preclude a finding of abandonment.

### IV. CONCLUSION

We conclude that the statute in effect at the times relevant to this case did not present the exclusive method by which a board of county road commissioners could abandon a county road. We further conclude that the trial court did not err in determining that the facts in this case established that a common-law abandonment of Cooks Drive occurred.

Nonetheless, we are sympathetic to the public-policy argument that plaintiffs advance on appeal, i.e., that it would be better if statutory abandonment through board resolution was the only method available, so that landowners may clearly know which roads have and have not been abandoned without the need for a judicial determination. As noted above, we have rejected that public-policy argument as one that must be brought before the Legislature for possible revision of the statute. We encourage the Legislature to consider this issue.

We affirm.