*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JLT,

        Petitioner-Appellee,

v

DAC,

        Respondent-Appellant.

UNPUBLISHED
December 12, 2019

No. 348098
Oakland Circuit Court
Family Division
LC No. 2019-869918-PP

Before: FORT HOOD, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order denying his motion to terminate an ex parte personal protection order (PPO) issued against him in favor of petitioner. We reverse and remand for entry of an order granting respondent's motion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is petitioner's biological father.[1] According to respondent, petitioner moved out of state and ceased contact with respondent in July 2017. In December 2018, respondent learned that petitioner had returned to Michigan. On January 20, 2019, respondent went to petitioner's home in Royal Oak and rang the doorbell. Petitioner answered the door and told respondent to leave and that she was calling the police. Respondent stayed on her porch for a period of time, but returned to his car and then left.[2] At 7:10 p.m. on January 20, 2019,

---

[1] Respondent and petitioner's mother divorced when petitioner was a child; petitioner's mother subsequently remarried and petitioner was adopted by her stepfather. Petitioner was a legal adult at all relevant times in these proceedings.

[2] As we will discuss, the parties offer differing versions of the precise timetable of events. According to respondent, he arrived at petitioner's home at 6:19 p.m., returned to his car at 6:48 p.m., and left in his car about 10 minutes later. According to petitioner's January 22, 2019

-1-

petitioner sent a text message to respondent stating: "I have made a police report and if you are found on my property or my work you will be arrested. I am not interested in having you in my life. Any further contact is stalking and/or trespassing[.]" Respondent replied, "Can you at least tell me why you don't want me in your life?" Petitioner did not answer, and respondent did not contact petitioner after that text message.

On January 22, 2019, petitioner filed a petition for an ex parte PPO against respondent under MCL 600.2950; MCL 600.2950a. The petition stated that petitioner needed a PPO because respondent had entered onto her property and did the following things that made her fear violence or interfered with her freedom: (1) at 6:00 p.m. on January 20, 2019, respondent came to her home and refused to leave; he stood on the porch yelling for over 45 minutes scaring her and her daughter; (2) at about 8:00 p.m. on January 20, 2019, respondent went into petitioner's backyard, tried to break into her home's back door, and banged on the back window where her daughter was sleeping; the police came but respondent was gone; and (3) at 8:30 p.m. on January 20, 2019, the police called respondent and asked him not to return to petitioner's home; respondent told the police that petitioner was his daughter and that he could come to her home whenever he wants. On January 22, 2019, the trial court entered an ex parte PPO.

Respondent subsequently filed a motion to terminate the ex parte PPO, arguing that the allegations in the petition were false. At a February 26, 2019 hearing on respondent's motion, petitioner testified that respondent arrived at her home at about 6:30 p.m. on January 20, 2019, stayed on the porch for about 45 minutes, and was yelling. Petitioner further testified that at 8:40 p.m. that night, she heard someone slam her back door and bang on her window; she called the police, who found what they believed to be male footprints in the yard. Petitioner never saw anyone in the yard and could not identify respondent as the person in her backyard. Respondent denied having returned to petitioner's home, presented evidence to show that he had not and could not have done so, and denied having had any contact with petitioner after responding to her 7:10 p.m. text message. The trial court denied respondent's motion, stating that the 8:40 incident "doesn't matter that much," but that respondent had contacted petitioner via text message after petitioner made it clear she would consider any further contact to be stalking, and that "[t]hat's all I need."

This appeal followed.

## II. BURDEN OF PERSUASION

Respondent argues that the trial court impermissibly shifted the burden of persuasion to him. Although, as discussed later in this opinion, we find that the trial court erred by denying his motion to terminate the PPO, we disagree that the trial court shifted the burden of persuasion. Because respondent did not raise this issue before the trial court, it is unpreserved. *General*

---

petition for a PPO, respondent arrived at her home at 6:00 p.m., although she testified at a February 26, 2019 hearing that respondent arrived at 6:30 p.m. According to petitioner, respondent remained on her porch for 45 minutes.

*Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). This Court reviews unpreserved issues for plain error. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 427 (quotation marks and citation omitted).

An individual against whom an ex parte PPO has been entered may petition to modify or rescind the PPO. MCL 600.2950a(13), (14). "[U]nder MCR 3.310(B)(5) the burden of justifying continuation of a PPO granted ex parte is on the applicant for the restraining order. Hence, the petitioner [has] the burden of persuasion in a hearing held on a motion to terminate or modify an ex parte PPO." *Pickering v Pickering*, 253 Mich App 694, 699; 659 NW2d 649 (2002).

There is no indication in the record that the trial court placed the burden of persuasion on respondent by requiring respondent to prove that petitioner was *not* entitled to a continuation of the PPO. Rather, the trial court heard all the evidence and held that petitioner's testimony justified the denial of respondent's motion. The trial court concluded that petitioner had proved through her testimony that she was entitled to a PPO. We see no indication that the trial court violated MCR 3.310(B)(5).

## III. DENIAL OF RESPONDENT'S MOTION

Respondent also argues that the trial court erred by denying his motion to terminate the ex parte PPO because there was no reasonable cause to believe that he would commit one of the acts listed in MCL 600.2950(1). We agree that the trial court failed to address whether there was reasonable cause to believe that respondent would commit one or more of the acts listed in MCL 600.2950(1); moreover, we conclude that the evidence on which the trial court relied in denying respondent's motion do not support a finding of reasonable cause.

We review for an abuse of discretion a trial court's decision to deny a respondent's motion to terminate a PPO. *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. We review for clear error a trial court's factual findings. *Id*. "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003).

The ex parte PPO was issued under MCL 600.2950, which governs domestic-relationship PPOs. *TM v MZ*, 501 Mich 312, 315; 916 NW2d 473 (2018). Under MCL 600.2950(4), a trial court is empowered (and indeed required) to issue a PPO if it determines "that there is reasonable cause to believe that the individual to be restrained or enjoined may commit 1 or more of the acts listed in subsection (1)." The acts listed in subsection (1) include:

(a) Entering onto premises.

(b) Assaulting, attacking, beating, molesting, or wounding a named individual.

(c) Threatening to kill or physically injure a named individual.

(d) Removing minor children from the individual having legal custody of the children, except as otherwise authorized by a custody or parenting time order issued by a court of competent jurisdiction.

(e) Purchasing or possessing a firearm.

(f) Interfering with petitioner's efforts to remove petitioner's children or personal property from premises that are solely owned or leased by the individual to be restrained or enjoined.

(g) Interfering with petitioner at petitioner's place of employment or education or engaging in conduct that impairs petitioner's employment or educational relationship or environment.

(h) If the petitioner is a minor who has been the victim of sexual assault, as that term is defined in section 2950a, by the respondent and if the petitioner is enrolled in a public or nonpublic school that operates any of grades K to 12, attending school in the same building as the petitioner.

(i) Having access to information in records concerning a minor child of both petitioner and respondent that will inform respondent about the address or telephone number of petitioner and petitioner's minor child or about petitioner's employment address.

(j) Engaging in conduct that is prohibited under section 411h or 411i of the Michigan penal code, 1931 PA 328, MCL 750.411h and 750.411i.

(k) Any of the following with the intent to cause the petitioner mental distress or to exert control over the petitioner with respect to an animal in which the petitioner has an ownership interest:

(*i*) Injuring, killing, torturing, neglecting, or threatening to injure, kill, torture, or neglect the animal. A restraining order that enjoins conduct under this subparagraph does not prohibit the lawful killing or other use of the animal as described in section 50(11) of the Michigan penal code, 1931 PA 328, MCL 750.50.

(*ii*) Removing the animal from the petitioner's possession.

(*iii*) Retaining or obtaining possession of the animal.

(l) Any other specific act or conduct that imposes upon or interferes with personal liberty or that causes a reasonable apprehension of violence. [MCL 600.2950(1) (footnote omitted).][3]

In determining whether reasonable cause exists, the trial court is required to consider "[t]estimony, documents, or other evidence" and "[w]hether the individual to be restrained . . . has previously committed or threatened to commit 1 or more of the acts listed in subsection (1)." MCL 600.2950(4)(a) and (b). As noted, "the burden of proof in obtaining the PPO, as well as the burden of justifying continuance of the order, is on the applicant for the restraining order." *Pickering*, 253 Mich App at 701.

The trial court stated that petitioner was entitled to a PPO because respondent came to her home, stood on the porch for 45 minutes, and responded to her text message after she indicated that she no longer wanted contact. The trial court explicitly did not consider the allegations that respondent had tried to enter petitioner's home and banged on the window later that night, and instead stated, "[T]he eight o'clock one doesn't matter that much. You–you didn't see him, it may not have been him. I'm relying on the . . . earlier one and the fact that you sent him a text that said any further contact is going to be considered harassment or stalking, and he responded to your text. That's all I need." The trial court never explicitly addressed MCL 600.2950 and did not state that it found reasonable cause to believe that respondent would commit one or more of the acts listed in MCL 600.2950(1).

We conclude that the trial court abused its discretion by denying respondent's motion to terminate the ex parte PPO. As noted, under MCL 600.2950(4), the trial court must issue a PPO if it finds that there is reasonable cause to believe that respondent may commit one or more of the acts listed in subsection (1). Here, however, the trial court did not address MCL 600.2950 or find reasonable cause to believe that respondent would commit an act identified in MCL 600.2950(1). Rather, as previously indicated, the trial court stated that the PPO was justified simply because respondent had responded to petitioner's text message after she told him that she did not want any further contact.

The list of acts found in MCL 600.2950(1) includes "[e]ntering onto premises," MCL 600.2950(1)(a), and "[e]ngaging in conduct that is prohibited under section [MCL 750.]411h or [MCL 750.]411i,"[4] MCL 600.2950(1)(j). MCL 750.411h(2) makes it a crime to engage in "stalking." MCL 750.411h(1) provides the following relevant definitions:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

---

[3] The pertinent statutory subsections appear to be MCL 600.2950(1)(a) and (j).

[4] MCL 750.411i, which defines the crime of aggravated stalking, is not implicated in this case because there is no evidence that there exists any of the additional circumstances listed in MCL 750.411i(2) to constitute aggravated stalking.

(b) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(c) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(d) "Stalking" means a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(e) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(*i*) Following or appearing within the sight of that individual.

(*ii*) Approaching or confronting that individual in a public place or on private property.

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

Here, the evidence at the motion hearing established, and the trial court found, that respondent entered onto petitioner's property once on January 20, 2019, before being informed by petitioner that she did not desire any contact. Respondent subsequently sent petitioner one text message after petitioner expressed her desire for no contact.

To support the issuance or continuation of a PPO on the basis of harassment or stalking, "[t]here must be evidence of two or more acts of unconsented contact that caused the victim to suffer emotional distress and that would cause a reasonable person to suffer emotional distress." *Hayford*, 279 Mich App at 330. Multiple acts by a respondent that are "connected in time and space" may constitute "a single incident comprising a series of continuous acts, each

-6-

immediately following the other" rather than a "course of conduct" or repeated unconsented contact. *Pobursky v Gee*, 249 Mich App 44, 47-48; 640 NW2d 597 (2001). We conclude that respondent's contact with petitioner at her home and subsequent single response to her text message a short time later was such a single incident. In other words, there was no evidence presented that respondent either stalked petitioner by engaging in a "course of conduct" or that he harassed petitioner by engaging in "repeated or continuing" unconsented contact. MCL 750.411h(1)(c), (d). The trial court's decision to deny respondent's motion was therefore outside the range of principled outcomes. *Hayford*, 279 Mich App at 325.

Reversed and remanded for entry of an order granting respondent's motion to terminate the PPO. We do not retain jurisdiction.


/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra