*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEMORIS CALLOWAY,

　　　　　　　Plaintiff-Appellee,

v

SHALONDA GREEN and JNS ENTERPRISE
CORPORATION,

　　　　　　　Defendants-Appellants.

UNPUBLISHED
December 18, 2025
1:18 PM

No. 373796
Wayne Circuit Court
LC No. 23-004372-CZ

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendants, Shalonda Green and JNS Enterprise Corporation (JNS), appeal as of right the trial court's order quieting title in favor of plaintiff, Demoris Calloway. We affirm.

## I. FACTUAL BACKGROUND

This action arises from the recording of an allegedly fraudulent quitclaim deed. In a complaint filed April 6, 2023, Calloway alleged that he purchased a home at 7610 Braile in Detroit, Michigan, from Green via a quitclaim deed executed on January 1, 2013. Calloway alleged that, on November 7, 2014, Green forged his signature on another quitclaim deed transferring the property to herself and JNS. This deed was recorded on November 10, 2014. Calloway explained:

> On the purported November 7, 2014 Quit Claim Deed, the words "for Shalonda Green" appear in the notary jurat above the notary public's signature, indicating that the notary public only signed the document as to Defendant Shalonda Green and not as to Plaintiff Demoris Calloway, who did not sign the document.

Calloway stated that he discovered the forgery on October 7, 2022. He additionally stated that, since 2014, defendants have leased the property and collected proceeds to Calloway's exclusion.

In Count I of the complaint, Calloway alleged that defendants violated the statute of frauds, stating that the 2014 deed violated MCL 566.106 and MCL 566.108, as it was not signed by Calloway or anyone authorized by him. In Count II, he asked that title to the property be quieted

-1-

in his favor.  Finally, in Count III, he alleged slander of title, arguing that recording the fraudulent deed violated MCL 565.108, causing damages exceeding $25,000 through lost rental income and legal costs.  Calloway asked the trial court to declare that the 2014 deed was void and enter a judgment that he owned the property in fee simple.  He further requested that the court order defendant to pay over $25,000 in compensatory damages, attorney fees, costs, and exemplary damages, and quitclaim the property to him.

On May 3, 2023, defendants filed an answer, generally denying liability, and a list of affirmative defenses.  Defendants alleged, among other things,

> [t]hat the incident described in the Complaint was caused either totally or partially by the Plaintiffs [sic] own negligence in failing to see that he had no valid interest in the property for 7 years and therefore any recovery by the Plaintiff must be reduced in total or in part.

A bench trial was held on September 18 and 19, 2024.  Calloway testified that he purchased the home in 2000 for $104,000, made extensive renovations, but lost it during the 2007 housing crisis.  He explained that he met Green in 2006 and had worked as a handyman on some of her properties.  Green offered to buy the house, and purchased it at auction for $25,000.  Calloway stated that he thereafter rented the property back from Green.  Calloway testified that, in 2011, he entered into a land contract with Green for the property for $16,000.  However, Calloway never paid any of the $16,000 because he lost his job.  Calloway testified that Green suggested they rent the property out, and that any rental profits would go toward Calloway's $16,000 balance.  In 2013, Green deeded the property to Calloway.  Calloway agreed to allow Green to manage the property and collect rent from tenants to pay off the remaining balance.  Calloway testified that he believed the balance was paid off by 2016.  In 2016, Calloway saw that JNS was listed as the tax payor for the property.  Calloway explained that he mistakenly thought tax payment could transfer ownership.  He believed he'd lost the property and did not follow up with Green.  Calloway further attested that he first saw the 2014 deed purporting to transfer ownership of the property to Green and JNS in October 2022.  He denied signing the 2014 deed.

Following Calloway's testimony, the de bene esse video deposition of Notary Barbara J. Whitney was played for the court.  According to a transcript of the testimony, Whitney asserted that, in November 2014, she was an assistant branch manager and notary public at Comerica Bank in Redford Township.  The bank required her to keep a notary log for every notarization.  Regarding the November 2014 deed, Whitney attested that she notarized only Green's signature.  She explained that she wrote "For Shalonda Green" above her notary signature to indicate that she notarized only Green's signature on a document that called for more than one signature.  Whitney stated that it was her practice to add that notation when notarizing only one signer on a document requiring multiple signatures, to clarify the scope of her notarization.  Whitney's notary log for November 7, 2014 contained Green's entry and signature, but there was no entry for Calloway that day.  Whitney confirmed that, had Calloway signed the deed in her presence, she would have had him sign the logbook as well.  Whitney also confirmed that she did not notarize Calloway's signature and that only Green appeared before her on November 7, 2014.

Forensic Analyst Erich J. Speckin was qualified as an expert in document analysis and handwriting examination.  Speckin testified that he examined 13 known signatures from Calloway,

dating from before and after the 2014 deed was allegedly signed. Speckin included "control" samples in his review of Calloway's signature, explaining that "controls would be like a driver's license, a passport, things that we know almost certainly that the person signed." He also used self-authenticating documents, which include "canceled checks, lease agreements, things that happened in the past and that you know happened in the past." The "known" signatures included Calloway's 2011 and 2015 driver's licenses, his 2009 passport, 2017 and 2018 leases and rental documents, a 2018 odometer statement, and the 2023 Verified Complaint.

Speckin compared the sample signatures to the signature on the 2014 deed. He testified that his process included analyzing known signatures to identify the writer's repeatable handwriting habits; considering consistency and any changes that might occur across time due to issues like injuries or aging. He then compared the writing habits in the questioned signature to the known signatures and vice versa, categorizing the frequency of each habit. Speckin asserted that it was highly probable that the 2014 deed signature was not Calloway's. In lay terms, Speckin stated that this meant he was "virtually certain" Calloway did not sign the 2014 deed.

Green testified on the second day of trial. She stated that she bought 7610 Braile in December 2008 for $25,000 at a foreclosure auction, after learning of it through a realtor. She began renting the property to Calloway in March 2010 for $1,000 per month. She and Calloway entered a land contract in January 2011 for $16,000. She later executed a quitclaim deed to Calloway dated March 28, 2013, and acknowledged that the deed transferred her interest to him as sole owner as of that date. She said she prepared the deed and filled in the details. Green further testified that the 2013 deed was executed in connection with Calloway seeking assistance through the Michigan State Housing Development Authority (MSHDA) Step Forward program to address delinquent taxes. Green testified that she helped with the application and that MSHDA paid the 2010-2012 taxes.

Green testified that she prepared the November 2014 deed and claimed that Calloway signed it. She believed they met at a bank to notarize the document. Green acknowledged confusion about where she had the document notarized, initially mentioning Charter One or Chase Bank, but later stating she went to Comerica Bank. At one point, she was confronted with her own deposition testimony, in which she stated that she last saw Calloway in October 2014. At trial, however, she testified that they were together for the November 7, 2014 signing. Green stated that she and Calloway "filled [the deed] out together" before going to the bank, and that Calloway signed the document before they went to the bank. Green admitted that Whitney's notary log for November 7, 2014 showed only her signature, but insisted Calloway was with her on that date. When asked for proof aside from his name on the deed, she offered nothing beyond her own testimony. Green testified that she recorded the deed on November 10, 2014. She began renting the property to tenants shortly thereafter. Green agreed that she collected at least $120,000 in rent over an approximate 10-year period.

Following testimony and closing statements, the trial court issued its ruling from the bench. The court found the November 2014 deed invalid because Calloway's signature was not properly acknowledged or notarized. The court credited Whitney's testimony that she only notarized Green's signature and that her log did not contain Calloway's name. The court also found that Calloway did not sign the deed, relying on Speckin's expert opinion that it was "highly probable" the signature was not Calloway's. The court thus ruled that the deed failed Michigan's

acknowledgment and statute of frauds requirements and could not effect a conveyance from Calloway to defendants. Because Green had previously quitclaimed her interest to Calloway in 2013, and the 2014 deed conveying the property back to her was invalid, the court quieted title in favor of Calloway.

The court declined to award damages based on rents collected by Green due to a lack of evidence enabling a reliable calculation and equitable concerns, given Green's de facto management, tax payments, and upkeep on the property over the years. The court found that slander of title had been properly established, given that the invalid 2014 deed constituted a false recorded statement made to transfer interest in the property back to Green. It did not award attorney fees to Calloway at that time because it could not identify authority supporting fees on that claim. However, the court awarded costs to Calloway as the prevailing party and invited Calloway to file a motion with specific authority on attorney fees.

On November 15, 2024, the trial court entered a judgment quieting title to the property in Calloway's favor. Defendants moved for reconsideration on December 6, 2024. Defendants argued that Calloway was unjustly enriched by defendants' payment of taxes, utilities, upkeep, and repairs on the property. Defendants claimed that Calloway acknowledged owing them $12,188 in a MSHDA application and that he failed to pay rent on the property in 2013 and 2014, totaling $19,000. Defendants also claimed that Calloway retained Federal Emergency Management Agency (FEMA) payments of $7,531, without using the funds for property repairs. Defendants stated that the property increased in equity by $74,000 over 10 years while Calloway made no contributions. In total, they calculated that Calloway owed $93,719. Defendants request the Court reopen proofs for the limited purpose of determining what amount of outstanding rent, taxes, utilities, upkeep, repairs, and increase in equity should be awarded to defendants as an offset against Calloway's recovery.

The trial court entered an order denying the motion for reconsideration on December 16, 2024. In support of its ruling, the court stated that "there was no unjust enrichment in favor of Plaintiff. While Defendants paid the cost of taxes, maintenance, and utilities, Defendants also received the rental income from the property during time period in question." Under MCR 2.119(F)(3), the Court found no "palpable error by which the court and the parties have been misled." This appeal followed.

## II. ANALYSIS

### A. GREAT WEIGHT OF THE EVIDENCE

Defendants argue that the trial court's ruling in Calloway's favor was against the great weight of the evidence because Calloway failed to prove, by a preponderance of the evidence, that his signature on the 2014 deed was forged and invalid. We disagree.

Although defendants argue that the trial court's ruling was against the great weight of the evidence, that standard is not applicable in civil bench trials. See *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652 n 14; 662 NW2d 424 (2003). Instead, "[w]e review a trial court's findings of fact at a bench trial for clear error and review its conclusions of law de novo." *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023). A finding of fact "is clearly erroneous if there is

-4-

no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 715-716 (quotation marks and citation omitted). In all respects, we defer "to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Id*. at 716 (quotation marks and citation omitted). This Court reviews actions to quiet title de novo. *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998).[1]

> Actions to quiet title are equitable in nature. *Id*. Under MCL 600.2932,
>
> > (1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

The plaintiff in a quiet-title action bears the burden to establish a prima facie case of title. *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 470; 966 NW2d 729 (2021). "If the plaintiff makes out a prima facie case, the defendant then has the burden of proving superior right or title in itself." *Id*. Under MCL 565.47 and MCL 565.15, it is presumed that a deed transferring real property is valid if it is in writing, signed by the grantor, witnessed, and notarized. A party claiming fraud, including forgery, has the burden to prove the fraud or forgery by clear and convincing evidence. *Groth v Singerman*, 328 Mich 615, 619; 44 NW2d 155 (1950); *Foodland Distrib v Al-Naimi*, 220 Mich App 453, 459; 559 NW2d 379 (1996). Under Michigan law, forged deeds are completely invalid and without legal effect. *Fletcher v Dutton*, 265 Mich 231, 233; 251 NW 332 (1933). Additionally, the recording of an invalid document does not make it valid. *Special Prop VI, LLC v Woodruff*, 273 Mich App 586, 591; 730 NW2d 753 (2007).

Here, the trial court correctly concluded that Calloway's signature was forged and that the November 2014 deed was therefore invalid. The trial court's analysis began with the fundamental requirement that deeds must be properly notarized under Michigan law. The evidence clearly established that Calloway's signature was never notarized. Notary Barbara Whitney testified unequivocally that she only notarized Green's signature, as evidenced by her notation "for Shalonda Green" above her notary signature and the absence of Calloway's name in her notary log. Additionally, Speckin's handwriting analysis testimony strongly supported the trial court's conclusion. Speckin's methodology involved comparing the questioned signature to thirteen known signature samples spanning timeframes before and after the questioned document. His conclusion that it was "highly probable" the signature was not genuine represents a high degree of certainty. Finally, Calloway's consistent denial that he signed the document, combined with his testimony that he first saw the 2014 deed in 2022, supported the court's finding that he did not sign the 2014 deed.

Based on the evidence, the testimony at trial, and the deference owed to the trial court with regard to judging the credibility of witnesses, *Avery*, 345 Mich App at 716, we conclude that the trial court did not clearly err by ruling that Calloway's signature, and therefore the entire deed,

---

[1] On appeal, defendants do not challenge the trial court's rulings regarding the statute of frauds or slander of title.

were invalid. Having established that the deed was not properly acknowledged and the signature was forged, the trial court correctly concluded that the deed is void. See *Fletcher*, 265 Mich at 233; *Special Prop VI, LLC*, 273 Mich App at 591. Defendants are not entitled to relief.

## B. RECONSIDERATION AND REOPENING OF PROOFS

Defendants also argue that the trial court abused its discretion by refusing to reopen proofs or hold an evidentiary hearing to compute offsets for unjust enrichment. We disagree.

"A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion." *Tripp v Baker*, 346 Mich App 257, 274; 12 NW3d 45 (2023). An abuse of discretion occurs if the court "chooses an outcome outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).[2]

"MCR 2.119(F)(3) requires the party moving for reconsideration to 'demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.' " *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018), quoting MCR 2.119(F)(3). Defendants raised their unjust enrichment claim and their request to reopen the proofs for the first time in the motion for reconsideration. Generally, a trial court has discretion to refuse to consider new legal theories or evidence in a motion for reconsideration if those matters could have been presented earlier. *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). Defendants' claim of unjust enrichment in this matter was predicated on Calloway's alleged failure to pay outstanding debts, retention of FEMA funds, and defendants' maintenance of the property, which they claim increased its value and equity. The unjust-enrichment claim was not contingent on, or related to, the proceedings pertaining to Calloway's claims in this matter. Defendants thus could have raised this claim at any point prior to the trial court's entry of a judgment in favor of Calloway, but elected not to do so. On this record, the trial court did not abuse its discretion in denying defendants' motion for reconsideration. *Yoost*, 295 Mich App at 220.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[2] The record indicates that defendants moved for reconsideration in order to raise their argument regarding unjust enrichment and requested that the court thereafter reopen the proofs to allow for further evidence regarding that issue. The trial court treated the filing as a motion for reconsideration. On appeal, defendants mischaracterize the motion at issue on appeal solely as a motion to reopen the proofs. They do not challenge the court's treatment of the motion as one for reconsideration. Based on the foregoing, we review the motion and the trial court's ruling in the reconsideration framework.