# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 17, 2017

Plaintiff-Appellee,

v

No. 332480
Berrien Circuit Court
LC No. 2014-004575-FC

MARIO JERMAINE CLARKE,

Defendant-Appellant.

Before: MURRAY, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his bench convictions of assault with the intent to commit great bodily harm less than murder, MCL 750.84,[1] first-degree home invasion, MCL 750.110a, and three counts of armed robbery, MCL 750.529. The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12(1)(a), to 25 to 70 years' imprisonment for the assault conviction and each of the armed robbery convictions. It sentenced him to 20 to 70 years' imprisonment for the home invasion conviction. The trial court ordered the sentences to run concurrently. On appeal, defendant maintains that he did not receive a fair trial as a result of several errors. We disagree and affirm defendant's convictions and sentences.

## I. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

Defendant first argues that there was insufficient evidence to support his convictions of home invasion, armed robbery, and assault with intent to commit great bodily harm less than murder. The evidence at trial, he maintains, showed that Trevor Sims and Marcus McNear had been given permission to enter the Baggett home and take marijuana. The evidence also showed that McNear fired the handgun at Ashley Baggett in self-defense after she rammed her car into the car in which defendant was riding. In the alternative, to the extent that there was evidence to

---

[1] The trial court found defendant guilty of assault with intent to commit great bodily harm as a lesser included offense of the original charge, assault with the intent to murder. See MCL 750.83.

-1-

support these convictions, he states that the convictions were contrary to the great weight of the evidence.

This Court reviews a challenge to the sufficiency of the evidence by examining the "record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). This Court must resolve all conflicts in the evidence in favor of the prosecution. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). However, this Court reviews an argument that the trial court's verdict at a bench trial was contrary to the great weight of the evidence by examining whether the trial court's findings were clearly erroneous. MCR 2.613(C); see *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 651-652 n 14; 662 NW2d 424 (2003). This Court will conclude that a trial court's finding was clearly erroneous when, after reviewing the entire record, it "is left with a definite and firm conviction that the trial court made a mistake." *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citation and quotation marks omitted).

## B. ANALYSIS

To obtain a conviction for home invasion in the first degree, the prosecution had to prove beyond a reasonable doubt that defendant—as a principal or as an aider and abettor—broke into and entered the Baggetts' dwelling, or entered the Baggetts' dwelling without permission, and that he did either of those with the intent to commit a felony, larceny, or assault, or that he broke and entered the dwelling or entered the dwelling without permission and while entering, present in, or exiting the dwelling committed a felony, larceny, or assault. The prosecution also had to prove that defendant or an accomplice was armed or that another person was lawfully present when defendant did one of those three acts. See MCL 750.110a(2); MCL 767.39; *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010) (stating the elements of first-degree home invasion).

Defendant does not contest whether the prosecution presented sufficient evidence to establish every element of first-degree home invasion—he does not dispute that the Baggett home was a dwelling; that Junior Baggett, Ashley, and Steven Baggett, or Ashley's children were lawfully present; or that Sims had a handgun or stole cash from the home. See MCL 750.110a(1)(a) (defining dwelling); MCL 750.110a(1)(b) (defining dangerous weapon); MCL 750.110a(2)(a) and (b) (providing that the prosecution must prove that the defendant was either armed with a dangerous weapon or that another person was lawfully present in the dwelling). Rather, he maintains that there was evidence that Ashley authorized them to enter the Baggetts' home and take the marijuana. Because they had permission, he argues, their entry into the Baggetts' home did not amount to breaking and entering or entering without permission and they could not have committed a larceny by taking the marijuana.

In making the argument that permission negates the breaking and entering element, defendant relies on *People v Brownfield (After Remand)*, 216 Mich App 429; 548 NW2d 248 (1996), and similar authorities. In that case, this Court held that a person cannot be guilty of breaking and entering under a different statute, MCL 750.110, if the person entered the dwelling under a bona fide belief that he or his accomplice had the right to enter the dwelling and remove the property at issue. See *Brownfield*, 216 Mich App at 431-432. He also relies on the fact that

one cannot commit a larceny without having the specific intent to steal, and notes that a person who has a good faith belief that he had the right to take property does not have the intent to steal. See *People v March*, 499 Mich 389, 401, 403; 886 NW2d 396 (2016), and *People v Hillhouse*, 80 Mich 580, 586-587; 45 NW 484 (1890). However, even if permission could be said to negate both the breaking and entering element of MCL 750.110a(2), which is not entirely clear given the difference in the statutory elements, compare MCL 750.110 with MCL 750.110a(2), and the specific intent of larceny, there was ample evidence to support the trial court's finding that neither defendant nor his companions had permission to enter the Baggetts' dwelling or to take the marijuana.

At trial, Clarke did not testify that Ashley gave him or his companions permission to enter the Baggett home and take marijuana, but he did testify that he did not know any of the Baggetts, did not know anything about their home, did not enter the dwelling, did not take anything from the dwelling, and did not have any involvement with the entry and taking by Sims and McNear. Ashley similarly testified that she had never met Clarke, Sims, or McNear, and she denied giving anyone permission to enter the dwelling or take the marijuana. Steven and Junior also testified that they did not know defendant, Sims, or McNear, and did not give anyone permission to enter their dwelling or take marijuana.[2]

This evidence was sufficient to support the trial court's finding that no one gave defendant, Sims, or McNear permission to enter the Baggetts' dwelling or to take possession of the marijuana. *Roper*, 286 Mich App at 83. Whether Ashley gave any of the three men permission to enter the home and take marijuana was a matter of the weight and credibility to be afforded the conflicting testimony. And although defendant asks this Court to disregard the testimony by the Baggetts on the ground that their version of events is incredible, this Court may not assess their credibility. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997); *People v Lemmon*, 456 Mich 625, 646-647; 576 NW2d 129 (1998). Viewing the evidence in the light most favorable to the prosecution, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), the prosecution presented sufficient evidence to support the trial court's finding that neither defendant nor his accomplices had permission to enter the Baggetts' home or to take the marijuana. Moreover, on this record, it cannot be said that the trial court clearly erred when it found that neither defendant nor his accomplices had permission to enter the home or take marijuana. See MCR 2.613(C).

---

[2]Additionally, the contention that Ashley had given defendant, Sims, or McNear permission to enter her home and take the marijuana was belied by the efforts that she took to catch the men who broke into her home. Presumably, if Ashley were in on the theft, she would have arranged for defendant, Sims, or McNear to take the marijuana and make it look like a burglary on a night when no one, or at least no one other than her, was home. Additionally, even if Ashley felt compelled to "sell" the burglary story by feigning to pursue her coconspirators, it defies belief that she would do so by ramming her car into their car as they pulled away from the barn, pursuing them over a substantial distance at recklessly life-endangering speeds, and doing so while being shot at.

Defendant also maintains that the prosecution failed to present evidence to establish an assault with intent to commit great bodily harm less than murder because McNear testified that he was not actually trying to hit anyone when he put the gun outside the window and fired it. A person commits an assault with the intent to do great bodily harm less than murder, MCL 750.84, if he or she attempts or threatens to do corporal harm to another with force or violence, and does so with intent to cause great bodily harm less than murder. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). The requisite intent is "the intent to do serious injury of an aggravated nature." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (citation and quotation marks omitted). Only minimal circumstantial evidence is necessary to show the defendant's intent. *Id.* at 629.

McNear testified that he obtained the gun from Sims, put it out the window, and fired it in order to stop their pursuer from continuing the chase. Although there was testimony that their pursuer or pursuers were shooting at them, there was no physical evidence to corroborate that someone shot at defendant and his accomplices. There was, however, evidence that McNear not only fired the handgun during the chase, but also aimed his weapon at Ashley. Specifically, police officers found spent shell casings and fired bullets along the path of the chase and in the Neon and testified that the bullets were the same brand and caliber as found in the handgun recovered from the dumpster with McNear and defendant. An officer also testified that several shots struck the side of the Neon and that they did so while traveling away from it. The officer opined that the evidence showed that someone in the back passenger's seat of the Neon fired the shots. There was also testimony that the Neon's window had a safety feature that prevented the window from being lowered all the way down, and that several shots traveled through the Neon and out the back end of the car.

This Court must consider all the inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence because, when evidence is relevant and admissible, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). In such cases, it is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Id.*

Here, the evidence that the window could not be lowered all the way permitted an inference that the shooter had to make a deliberate effort to aim the weapon to the rear of the car. Additionally, there was testimony that Ashley rammed the Neon and maintained a dangerously close proximity to the Neon throughout the chase. When considered in light of the evidence that there were multiple shots and that they struck the rear of the Neon and even passed through Neon's rear, this evidence permitted an inference that the shooter was trying to aim the weapon at the pursuing car during the chase. This evidence in turn permitted a further inference that he intended to cause a serious injury of an aggravated nature to the driver of that car. See *Stevens*, 306 Mich App at 629 (stating that intent to cause serious harm can be inferred from the defendant's use of a dangerous weapon). Additionally, Ashley testified that a person from the red car fired at her, which she related to a driver who stopped at the scene of the accident in an emotional state immediately after the chase ended. Consequently, when viewed in the light most favorable to the prosecution, *Roper*, 286 Mich App at 83, there was sufficient evidence to allow a reasonable fact-finder to find that McNear intended to cause a serious injury of an aggravating nature when he fired at Ashley, *Stevens*, 306 Mich App at 628-629. The trial court did not

clearly err when it made these findings, MCR 2.613(C), and its findings were not against the great weight of the evidence, *Ambs*, 255 Mich App at 651-652 n 14.

## II. *CROSBY* REMAND

### A. STANDARD OF REVIEW

Defendant next argues that, because the trial court sentenced him under the mandatory sentencing guidelines and those guidelines have since been declared unconstitutional, he is entitled to a remand for a hearing to determine whether the trial court would have deviated from the sentencing guidelines had it known that the guidelines were merely advisory. This Court reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines. *People v McGraw*, 484 Mich 120, 123; 771 NW2d 655 (2009). However, our Supreme Court has stated that a defendant preserves such a challenge for appellate review by objecting to the trial court's scoring of offense variables (OVs) on the grounds stated in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by the decision in *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Defendant did not object to the trial court's scoring of the OVs on *Apprendi/Alleyne* grounds; therefore, this claim of error is unpreserved and must be reviewed for plain error affecting his substantial rights. *Id.* Accordingly, he must show that a plain or obvious error occurred and that the error likely affected the outcome of the lower court proceedings. *Id.* at 392-393.

### B. ANALYSIS

In *Lockridge*, our Supreme Court explained that a defendant who can demonstrate that his or her "guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment" and that his or her sentence was not "subject to an upward departure" has established sufficient potential for plain error to warrant a remand to the trial court for "further inquiry." *Id.* at 395. The Court characterized this procedure as a *Crosby*[3] remand, *id.* at 397, the purpose of which is to determine whether the trial court "would have imposed a materially different sentence but for the unconstitutional constraint" on its discretion to set an appropriate sentence. *Id.* at 398.

At sentencing, the trial court sentenced defendant on his assault conviction and the three armed robbery convictions to a 25-year minimum under MCL 769.12(1)(a). The court sentenced defendant to serve a minimum of 20 years in prison for the remaining offense, which was within the range provided by the guidelines. It also exercised its discretion and chose not make the sentences consecutive. Before the close of sentencing, the prosecutor reminded the trial court about *Lockridge* and specifically asked the court if its sentence would "differ in any way knowing that the guidelines" are now advisory. The trial court responded that its "sentence would not differ;" it clarified that it felt that the sentence was "reasonable . . . under the facts and circumstances of this case." Thus, the trial court recognized that it had the discretion to set a

---

[3] *United States v Crosby*, 397 F 3d 103 (CA 2, 2005).

minimum sentence outside the range provided by the guidelines and specifically stated that it thought the minimum sentence at issue was reasonable under the circumstances. For that reason, defendant has not demonstrated the need for a *Crosby* remand.[4]

Affirmed.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[4] Finally, we note that defendant raised several additional claims of error in his brief filed on his own behalf under Administrative Order No. 2004-6, Standard 4. He argued that the prosecution obtained his conviction through perjured testimony and engaged in other misconduct. He also claimed that his trial and appellate counsel were ineffective. We have carefully considered these additional claims of error and conclude that they are without merit.